(80 South. 29)

### BARRON v. HUGHES.    (4 Div. 790.)

(Supreme Court of Alabama.    Nov. 21, 1918.)

1. CANCELLATION OF INSTRUMENTS ⊙═45—BURDEN OF PROOF.

In an action to set aside a deed, plaintiff claiming an interest in land by inheritance, issue being whether land was purchased by plaintiff's deceased father or by her mother, who transferred the property, burden is upon plaintiff to reasonably satisfy judicial mind that the land had been purchased by father as alleged in the bill.

2. CANCELLATION OF INSTRUMENTS ⊙═47—SUFFICIENCY OF EVIDENCE.

In an action to cancel a deed, plaintiff claiming as heir of her father, issue being whether land had been purchased by the father or by plaintiff's mother, who had transferred same, evidence *held* insufficient to satisfy the judicial mind that father had any interest in property.

3. VENDOR AND PURCHASER ⊙═238—BONA FIDE PURCHASER—CLAIMS OF THIRD PERSON.

A purchaser of land, with knowledge of an equitable interest in a third person, may interpose a defense that his grantor was a bona fide purchaser.

Appeal from Circuit Court, Covington County; A. B. Foster, Judge.

Bill by Mary Barron against H. A. Hughes. Plaintiff dying during pendency of suit, cause was revived in the name of Mary Barron, her mother, as sole surviving heir. From a decree dismissing the bill complainant appeals. Affirmed.

Bill filed by Mary Barron against H. A. Hughes to have three lots in the town of Florala, Ala., sold for division, and the proceeds divided between the complainant and respondent as joint owners thereof. During pendency of the suit complainant died, and the cause was revived in the name of Mary Barron, her mother, as sole surviving heir.

It is averred in the bill that the complainant was a daughter of one J. R. Barron, who died in September, 1903, leaving surviving him a widow, Mary Barron, and two daughters, complainant and her sister, Josie Strother, both of whom were minors at the time of their father's death.

It is then alleged: That J. R. Barron purchased from one J. E. Hughes the three lots in controversy, together with certain other adjoining lots, agreeing to pay $200 for the same, and that a portion of the purchase money was paid in cash. That Hughes gave Barron a bond for title for the conveyance of the lots upon payment of the full purchase price. That Barron executed his notes to Hughes for the balance, and was placed in possession of the property by Hughes. That after the purchase he (Barron) built a house valued at about $1,500 upon the lots, and was residing thereon with his family at the time of his death. That this was all the real estate owned by said Barron at the time of his death. That it was less in area than 160 acres, and in value less than $2,000.

It is further alleged that said Barron, prior to his death, paid all of the purchase money, except $47, and that this balance was paid by Mary Barron, the widow, after his death, out of the proceeds of an insurance policy of the said J. R. Barron payable to his estate, and that after the payment of said $47 the said J. E. Hughes conveyed the lots in controversy to the said Mary Barron, a copy of which deed is attached to the bill; that in April, 1913, Josie Strother conveyed to complainant her interest in said lots.

It is then averred: That the deed made by Hughes to Mary Barron, and the payment of said balance due on the purchase price of said lots, inured to the benefit of complainant and Josie Strother and Mary Barron, share and share alike. That the payment was made with the money belonging to the estate of J. R. Barron, and the effect of the conveyance to Mary Barron was to vest in her the legal title, which she held in trust for the equal benefit of herself, complainant, and Josie Strother. That by virtue of the deed to said respondent, H. A. Hughes, he is vested with an undivided one-third interest in said lots, and that complainant, by inheritance from her father, together with the deed from her sister, Josie Strother, is vested with a two-thirds interest therein.

The bill further shows: That in March, 1912, the said Mary Barron executed a mortgage to one J. F. Croley on said lots here involved, and upon maturity of the mortgage, in 1913, she executed a deed to said Croley in satisfaction thereof, and that said Croley subsequently sold said lots to one W. R. Reid. That subsequent thereto the said W. R. Reid sold and conveyed the said lots to respondent, H. A. Hughes, who claims the entire interest therein.

The bill alleges possession of said three lots by complainant; seeks a cancellation of the deed to the respondent in so far as the same affects the two-thirds interest of complainant in said lots; and also seeks an injunction against an ejectment suit brought

---

⊙═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by the respondent, and a sale of the property for division.

The answer denies all the material averments of the bill, and specifically and expressly denies that the lots in question were sold by J. E. Hughes to J. R. Barron; but alleges, on the contrary, that the contract of sale was made by J. E. Hughes with Mary Barron, the wife of J. R. Barron, and that the said Mary Barron paid the purchase price thereof, and that the deed was executed to her in strict compliance with the contract of sale.

The answer further sets up that the respondent purchased the property from W. R. Reid without notice or knowledge of any equitable rights or claims on the part of the complainant, and that he is a bona fide purchaser for value, and entitled to protection. It is further alleged that W. R. Reid, from whom the respondent purchased, as well as Croley, from whom said Reid purchased, were likewise innocent purchasers in good faith, for value, without notice.

The testimony for the complainant tended to show that the contract of purchase was made by J. R. Barron to J. E. Hughes, and bond for title given by J. E. Hughes to J. R. Barron, or else that J. R. Barron contracted with the Florala Land Company for the purchase of said lots, and was given bond for title by said company. Complainant's evidence further tends to show: That none of the purchase money was paid before September, 1903; the contract of purchase being in 1899 or 1900. That, after the death of said Barron, the widow, Mary Barron, paid $50 of the purchase money, $47 of which was the proceeds of some character of insurance or sick benefit and also $50 given her by her husband before his death, which sum, however, said Mary Barron testified she paid in installments. The balance of the purchase money was paid by said Mary Barron out of money which she earned from the operation of a boarding house.

Complainant's testimony further tended to show that respondent and J. F. Croley had actual notice of the claim of complainant prior to the execution of their respective deeds.

The testimony for the respondent tended to show: That the contract of purchase was made by J. E. Hughes with Mary Barron, the said Hughes so testifying, and that there was no bond for title executed. That a note for the purchase money was executed by Mary Barron, and that she in person made the payments on the installment plan subsequent to the death of her husband, with the exception of one payment of $10 made by her uncle, one Wood. There was introduced in evidence a ledger of said Hughes in which the account of this sale is entered, and which he (Hughes) testified is in his own handwriting. The entry is headed "1900—Mary and J. R. Barron." The said Hughes testified that he placed the name of J. R. Barron on the ledger, as he was the husband, and had spoken to him about his wife purchasing the property. The entries show that the account is for the note for the purchase price of said lots, and then appear the dates of the several payments, varying in amounts from $10 to $50, until the full amount, with interest, was paid, and so entered upon the books. There was evidence further tending to show that the house was built on lots adjoining those in controversy at a cost of about $1,500, and, further, that J. R. Barron was insolvent.

Respondent denied that he had any notice whatever of the claim of the complainant at the time of his purchase. J. F. Croley also denied any notice of any such claim at the time of the execution of his deed, and W. R. Reid testified that he purchased the property from Croley for value, and without notice of any claim on the part of the complainant, for the purpose of building a home thereon. Respondent's testimony further tended to show that these were vacant lots adjoining the residence lot of said Mary Barron, and the only possession was the fact that they were fenced and in cultivation. Witness Croley testified that he agreed with Mary Barron that she should continue to cultivate the lots during the balance of the year, and that he gave her written authority to that effect; that he (Croley) bought the property for the purpose of selling the same to W. R. Reid, and that on the same day he executed a deed to said W. R. Reid for the consideration recited therein.

Upon submission of the cause for final decree upon pleading and proof, the trial court decreed that complainant was not entitled to relief and dismissed her bill, and from this decree the appeal is prosecuted.

Chapman & Lewis, of Dothan, and J. D. Bailey, of Florala, for appellant.

Henry Opp and Powell, Albritton & Albritton, all of Andalusia, for appellee.

GARDNER, J. One of the most important averments of the complainant's bill is that the lots in controversy were sold by J. E. Hughes to J. R. Barron, and this is one of the corner stones of complainant's cause of action. This allegation is strenuously denied by the respondent, and it is insisted by him that the lots were sold by J. E. Hughes to Mary Barron, and that a deed was executed to her in compliance with the contract of sale. For the establishment of this averment by the proof, complainant's case rests upon the testimony of Mary Barron and witness McLauchlin. The evidence upon this important feature of the case is, in some respects, in sharp conflict, and to discuss the same in detail would serve no useful purpose; that bearing upon this issue has been most carefully read, and re-read, and given very deliberate consideration.

We intend no detail criticism of the testimony of either of these witnesses. The for-

mer testified a second time in the cause, and while her evidence tends to support the theory of complainant upon the issue, yet it is, to our minds, very uncertain and unsatisfactory. The testimony of witness McLauchlin would seem to indicate that some character of contract was entered into by the Florala Land Company and J. R. Barron. The witness seems to be under the impression that the land company made a deed direct to J. E. Hughes, and that J. R. Barron went into possession of the lots under a contract with the Florala Land Company—this in the year 1899.

We think it clearly appears from the testimony, however, that the sale by J. E. Hughes was not until October, 1900. No deed to the Florala Land Company, and no deed from said company to Hughes, or, in fact, any writing evidencing the transactions testified to by witness McLauchlin, were offered in evidence. The entire transaction is left in a state of doubt and uncertainty. On the other hand, J. E. Hughes is positive and emphatic to the effect that he made the trade for the sale of these lots to Mary Barron; that he executed no bond for title, but took her note therefor, amounting to $200; that this trade was in October, 1900, and that nothing was paid thereon until after the death of her husband in 1903, the purchase price being paid by the said Mary Barron, in person, with the exception of one payment of $10 made by her uncle for her—all of which transactions, with the dates thereof, were entered by him in his ledger.

[1, 2] The burden is upon the complainant to reasonably satisfy the judicial mind that the contract of sale was made by J. E. Hughes to J. R. Barron, as alleged in the bill. But after a careful examination of all the evidence bearing upon this issue we do not feel persuaded to that degree of satisfaction required, and it results that complainant has therefore failed to sustain the burden of proof cast upon her.

We are therefore of the opinion that the decree dismissing the bill may well be rested upon this finding of fact. Moreover, it appears that W. R. Reid, from whom the respondent purchased, was a bona fide purchaser, for value, without notice. His testimony tends to show that he purchased the property in good faith for a home, for value, and that he had no notice whatever of any claim of the complainant thereto. And, indeed, we do not find any very material conflict in his testimony in this respect.

[3] As to whether or not respondent, H. A. Hughes, had notice of any equitable claim on the part of complainant, the evidence is in sharp conflict. But, whether he had such notice or not, if Reid, his vendor, was protected as a bona fide purchaser, for value, without notice, the respondent would be entitled to interpose that defense. Wilkinson

v. Solomon, 83 Ala. 438, 3 South. 705; 12 Michie Dig. 775.

It would appear, therefore, that the decree of the court below may also well be rested upon this ground. It results that the decree dismissing the bill will be here affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.