209 So.2d 378

**A. C. DECKER, Jr.**

v.

**Frank D. HAYS, Jr.**

3 Div. 331.

Supreme Court of Alabama.

April 4, 1968.

J. Paul Lowery, Montgomery, for appellant.

Crenshaw & Waller, Montgomery, for appellee.

MERRILL, Justice.

Appellee Hays sued appellant Decker for the alleged balance due for work and labor done as a broker in the transfer of stock in insurance companies. Verdict and judgment were for $4,065.00. Appellant's motion for a new trial was overruled.

Appellee's complaint was in two counts. Appellant filed a plea of the general issue and filed pleas in recoupment for $5,000.00, which he had paid appellee as an advance on the work he had agreed to do, but al-

leged that he had failed to perform his contract or agreement.

The main conflict in this case was a question of fact as to what the terms of the agreement were. Appellee's position was that he performed fully by arranging the transfer of shares in two insurance companies and that the transfer was effected. Appellant's position was that the transfer of shares was effected by appellee, but he failed to assist appellant in getting control of the board of directors so that the two insurance companies could be merged.

Appellee was a commission broker, specializing in insurance companies. Appellant was interested in acquiring control of an Alabama insurance company. One D. F. Shamberger, of Salem, Illinois, owned 50,-000 shares of common stock, the controlling interest, in Universal Southern Life Insurance Company, and appellee arranged a swap of Shamberger's stock to appellant in exchange for 65,000 shares of common stock, owned by appellant, in Life Underwriters Insurance Company of Shreveport, Louisiana.

Appellant testified without objection that on June 26, 1965, he received the 50,000 shares of stock in Universal Southern Insurance Company from Shamberger; that on August 27, 1965, Shamberger resigned as a director, suggesting to appellant a plan of procedure whereby appellant could have control of seven of the twelve directors as he, Shamberger, had had, but appellant did not think this was necessary; and that on November 1, 1965, a director's meeting was held, at which appellant was elected chairman of the board, chief executive officer and given authority to transfer the books and records to Shreveport, Louisiana.

We quote from appellant's testimony on direct examination as to how he failed to get control of the company:

"A Well, of course, once I had acquired the 50,000 shares of stock—

"Q You did acquire the 50,000 shares of stock, did you?

"A Right. Then the board Mr. Shamberger had on, his portion of the board—there are twelve members on the board—Mr. Shamberger had seven members on the board so he had control. Now, Mr. Shamberger said, 'Now, we will go down and release one at a time and you can place one of your board members on the board. This way you will come out with seven and have control of the company.' And I had talked to the board members and felt that this would not be necessary. That is, the board members of Universal Southern appeared that they were going to go along with everything. So we all, accepted the resignations of all the board members, seven, that were working with Mr. Shamberger. So that meant then there were five board members of Universal Southern that were opposed to Mr. Shamberger, which has been brought out, and then a board meeting was called, and these people were all released, the people Mr. Shamberger released as board members. And this left the five members who had appeared they were going along with me. After getting in they would not allow me to elect the board members, so I was the only one on the board. So I had no control whatsoever. They elected me Chairman of the Board, but I didn't have a vote, I had one vote to their five, so I had no control whatsoever of the company.

"Q Now, Mr. Decker, explain to the jury how they could prevent you from having control of the board by allowing you only one vote, how did that take place?

"A Well, they would not replace the others, would not allow me to replace anybody on the board that I wanted on the board. In other words, anybody who would come on the board to replace those seven people they elected themselves. So it ended up, I guess, they finally had eleven on the board that were friends of

theirs, people that were in the company so long, and I was the only one then, so the board controls and runs the show. And, of course, the chairman. They can put a chairman up there but it means nothing if he has nobody there who is going to vote with him."

Sometime in 1966, Great Southern Investment Corporation made a stock tender to the stockholders and bought enough stock to control Universal Southern Insurance Company.

The strongest documentary evidence submitted by either party was a check for $5,000.00 payable to appellee, on the back of which was typed above the endorsement—"Partial payment 5% brokerage fee for acquisition of 50 thousand Shares of Stock of Universal Southern Life Insurance Company of Alabama, at $2.48 per share." Appellee called the bank that issued the check and the bank's attorney advised appellee to change the "5%" to "7%" and endorse it. There is no dispute that the brokerage fee was 7%.

Appellee testified that "The agreement was I would obtain 50,000 shares of Universal Southern stock for Mr. Decker."

Appellant testified that "My agreement with Mr. Hays was that he was to assist in getting control, enough to control, enough to give us enough votes votes to merge the two companies and through the board, the stock the board owned, and the stock that I purchased, the stock of friends of the board, he thought that this could be handled."

Appellant's argued assignments of error, 2, 3, 4 and 5, concern the rulings of the court sustaining objections to questions propounded to appellee in cross examination.

2. "Q What was the agreed book value, estimated book value, of the shares of common stock in Universal Southern Life Insurance Company?

"A Mr. Lowery, I don't remember—

"THE COURT: Let me ask one question which may solve it.

"BY THE COURT:

"Q Did you have any agreement with him as to what book value would be made for any of the stock?

"A No, sir.

"THE COURT: All right. Sustain your objection."

This was the second time the question had been asked and objection had been made to it when asked the first time. After the witness had answered that he did not remember, and the court asked a question, the court sustained the original objection. The overruling of an objection to a question is harmless where the witness answers that he does not know or does not remember. Bailey v. City of Mobile, 277 Ala. 111, 167 So.2d 294; Tankersley v. Webb, 263 Ala. 234, 82 So.2d 259. It naturally follows that it is also harmless to sustain an objection to a question after the witness has testified that he does not know or does not remember.

3. "Q All right, sir. Who are the men that principally manage that company? (referring to Great Southern Investment Company).

"MR. CRENSHAW: If the Court please, I am going to object to bringing another company in. There is no issue raised as to any other company.

"MR. LOWERY: It does, Your Honor, we are going to show this company bought out the controlling interest of the Universal and kicked this man out contrary to the agreement.

"THE COURT: If you object to it, I sustain your objection.

"MR. CRENSHAW: I object.

"THE COURT: Sustain your objection.

"BY MR. LOWERY:

"Q Do you know whether Great Southern Investment Corporation owns the controlling interest of the common stock of the Great Southern Life Insurance Company?

"MR. CHENSHAW: I object.

"THE COURT: Sustain your objection".

■■ Two rulings of the court are included in a single assignment of error. An assignment of error which embraces more than one ruling must, to be sustainable, be good as to all. American Casualty Company of Reading, Pa. v. Devine, 275 Ala. 628, 157 So.2d 661; Lane v. Housing Authority of City of Elba, 270 Ala. 383, 118 So.2d 725. Here, neither of the questions was germane to the issues, and obviously, the second question pertained to matters at the time of trial rather than during the time the cause of action, if any, arose.

4. "Q Did you ever acquire any shares of common stock in the Universal Southern Life Insurance Company for any persons or corporations other than Mr. Art Decker during the time that you were also working for Mr. Decker?

"A No, sir.

"Q Did you acquire any shares of stock for any other than Mr. Decker after you had bought the 50,000 shares?

"MR. CRENSHAW: I object.

"THE COURT: Sustain your objection."

It is clear that any buying, selling or acquiring of stock by a broker after his employment by a client has ceased was neither material nor relevant to the issues raised in this cause.

5. "Q Now, Mr. Hays, after Mr. Decker acquired these shares of stock, did he have any dispute or opposition on the Board of Directors?

"MR. CRENSHAW: We object.

"THE COURT: Sustain your objection."

■ This question was not relevant when asked because all the testimony up to that point indicated that appellee's services had been completed when appellant acquired the stock. Moreover, assuming, without deciding, that the court erred in sustaining the objection, it is harmless error for the trial court to exclude evidence where such evidence was admitted at another time and in another form. Cole v. Louisville & Nashville R. Co., 267 Ala. 196, 100 So.2d 684; 2A Ala.Digest, Appeal & Error, ☞ 1058(1). The quoted testimony of appellant, given without objection, showing how he failed to follow the advice of Shamberger to get control of the company, clearly showed the opposition of the directors.

There are two other principles applicable to assignments of error 2 through 5.

■ Error must be made to appear, and appellant cannot be heard to complain that he was prejudiced by the ruling of the trial court in sustaining an objection to a question, the answer to which could not shed any possible light on the issues involved in the case. Neumiller v. Jenkins, 270 Ala. 231, 117 So.2d 402; 2A Ala.Digest Appeal & Error, ☞ 1056(1).

■ Assignments of error in rulings on evidence presents nothing for review, where the questions to which they relate show no injury from such rulings. Howell v. Dodd, 229 Ala. 393, 157 So. 211; Burgin .v. Phillips, 272 Ala. 78, 128 So.2d 491.

■ The evidence was in conflict as to the terms of the agreement. It was the jury's prerogative to believe or not believe witnesses where the evidence was in conflict. Locklear v. Nash, 275 Ala. 95, 152 So.2d 421. The jury chose to believe appellee's version.

On appeal, this court indulges all favorable presumptions in favor of the conclusion from the evidence reached in the trial court and will not disturb such conclusion unless it is plainly erroneous or manifestly unjust. Allred v. Dobbs, 280 Ala. 159, 190 So.2d 712. And the presumption in favor of the verdict is strengthened where the trial judge refuses to grant a motion for a new trial. Home Specialty Pest Control Co. v. McLeod, 275 Ala. 335, 154 So.2d 920.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.