480 So.2d 547 (1985)
Ex Parte Robert DOUTHIT.
(Re Robert DOUTHIT v. Paul T. WILKS, Sr., Jene C. Wilks, William F. Aldridge, Valley Federal Savings & Loan Association, Timothy John Morgan, Kimberly K. Morgan and Central Bank of the South).
83-1112.
Supreme Court of Alabama.
June 28, 1985.
On Application for Rehearing September 13, 1985.
*550 J.A. Dardess, Sheffield, for petitioner.
William F. McDonnell, Sheffield, for respondent.
TORBERT, Chief Justice.
This case concerns the priorities among several parties in the enforcement of a mechanic's lien. Robert Douthit petitioned this Court for a writ of certiorari following the Court of Civil Appeals' affirmance of the trial court's judgment in favor of the respondents, Paul T. Wilks, Sr., Jene C. Wilks, William F. Aldridge, Valley Federal Savings and Loan Association, Timothy John Morgan, Kimberly K. Morgan, and Central Bank of the South. 480 So.2d 544. The case was heard by the trial court without a jury.
The record before this Court reflects the following facts:
Douthit entered into a contract with Paul and Jene Wilks on June 24, 1982, to repair fire damage to their residence. The work was completed on July 9, 1982, and the payment of the contract price of $7,187.11 became due on August 9, 1982. Douthit perfected a mechanic's lien by filing a lien statement on September 16, 1982. He brought suit to enforce the lien on November 16, 1982.
At the time the repairs to the Wilkses' house were commenced, there were two prior mortgages on the property. The Wilkses purchased the property in 1970 from Aldridge. The Wilkses assumed a prior mortgage to Valley Federal Savings and Loan Association and executed a second mortgage to Aldridge. Subsequent to the commencement of the repairs, Aldridge foreclosed his mortgage on August 16, 1982, and purchased the property at the foreclosure sale.
Aldridge agreed orally on September 3, 1982, to sell the property to Timothy and Kimberly Morgan in exchange for $11,500.00 cash and the assumption of the Valley Federal mortgage of $20,298.74. The *551 Morgans paid to Aldridge $100.00 on September 3, 1982. Aldridge conveyed the property by general warranty deed dated September 8, 1982, and recorded the deed September 14, 1982. The Morgans paid an additional $3,900.00 of the purchase price on September 9, 1982, and took possession of the property on September 12, 1982.
On September 15, 1982, Douthit informed the Morgans that he had not been paid for his work on the house and that he intended to obtain a lien against the property. On September 17, 1982, one day after Douthit perfected his interest by filing his lien statement, the Morgans executed a mortgage to Central Bank of the South for the $7,500.00 balance of the purchase price. This balance was paid to Aldridge on September 22, 1982.
The Court of Civil Appeals, ultimately affirming the trial court's judgment in its entirety, found that the mortgage from Aldridge to Valley Federal Savings and Loan Association and the mortgage from the Wilkses to Aldridge were recorded prior to commencement of Douthit's repairs on the building and, therefore, had priority over Douthit's mechanic's lien. The court also determined that the Morgans had purchased the property from Aldridge as innocent purchasers for value, without notice, and thereby took title to the property free of Douthit's lien claim. It was further adjudged that the mortgage obtained from the Morgans by Central Bank of the South after Douthit had commenced work on the house and obtained his lien also had priority over Douthit's mechanic's lien. This Court granted Douthit's petition for certiorari. We reverse.
The petitioner cites as error the Court of Civil Appeals' finding: (1) that the Morgans were bona fide purchasers, for value, without notice, even though the Morgans had acquired actual notice of the mechanic's lien prior to full payment of the contract purchase price; (2) that the mortgage given to Central Bank subsequent to the commencement of work on the Morgans' property and recorded after the mechanic's lien statement was filed was superior to the prior recorded mechanic's lien; and (3) that Aldridge's interest in the property mortgaged to the Wilkses amounted only to a right of equitable redemption, which was extinguished by the subsequent foreclosure of the mortgage.

SCOPE OF REVIEW
Petitioner contends that the standard of review in the present case should be de novo and that the ore tenus rule should not apply because the evidence is basically undisputed. It is true that when the evidence before the trial court is undisputed, the ore tenus rule is inapplicable and the appellate court will sit in judgment of the evidence de novo, indulging no presumption in favor of the trial court's application of the law to the facts. Kessler v. Stough, 361 So.2d 1048 (Ala.1978); Perdue v. Roberts, 294 Ala. 194, 314 So.2d 280 (1975). However, in the present case, the facts most crucial to the outcome of the court's decision were not stipulated. The facts concerning whether the Morgans had actual knowledge of Douthit's specific lien claim prior to entering their contract for the purchase of the property from Aldridge were disputed. As to these disputed facts, the court heard ore tenus testimony and personally observed the witnesses. Where the facts are contradicted, such as in the present case, the rule of law which dictates that we must defer to the trial court in regard to findings of fact is clearly applicable and we, therefore, proceed on the presumption of the correctness due to be accorded the findings of the trial court.

FIRST ISSUE
Did the court err by finding that the Morgans were innocent purchasers, for value, without notice of Douthit's lien and thereby take title to the property free from the lien?
A mechanic's lien is purely statutory. Code 1975, § 35-11-211, states in pertinent part: "Such lien as to the land and buildings or improvements thereon, shall have priority over all other liens, mortgages or incumbrances created subsequent *552 to the commencement of work on the building or improvement...." A purchaser taking as absolute owner of the fee is clearly not included within any class mentioned in the statute. A purchaser is neither lienor, mortgagee, nor encumbrancer, but the absolute owner; and if he purchases without notice, actual or constructive, the statute gives no priority as against him. Guaranty Pest Control, Inc. v. Commercial Investment & Development Corp., 288 Ala. 604, 264 So.2d 163 (1972); Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90 (1928); Martin v. Clarke, 154 Ala. 425, 46 So. 232 (1908). This rule that allows a subsequent purchaser without knowledge of an outstanding debt to have priority over a later-filed lien applies only to existing buildings. However, a mechanic's lien, properly filed within the prescribed statutory six-month period, on a new building, has priority over a purchaser regardless of actual notice. The purchaser of a new building is charged with constructive notice during the statutory period and takes subject to a mechanic's lien filed on the property during this period. Starek v. TKW, Inc., 410 So.2d 35 (Ala.1982).
Since Code 1975, § 35-11-211, does not refer to subsequent purchasers, it has become the rule that the holder of a mechanic's lien has the obligation to show that the subsequent purchaser of an existing building had either actual or constructive notice of the lien at the time of the purchase, Starek, supra. We have also noted that it is difficult, if not impossible, to lay down any general rule as to what facts will in every case be sufficient to charge a party with notice or put him on inquiry. Veitch v. Woodward Iron Co., 200 Ala. 358, 76 So. 124 (1917).
In the present case, the trial court found that there was not sufficient evidence to charge the Morgans with notice of Douthit's lien. We must affirm the trial court's decree if it is fairly supported by credible evidence under any reasonable aspect, regardless of what might be our view of the evidence. Patterson v. Brooks, 285 Ala. 349, 232 So.2d 598 (1970). When the trial court hears evidence presented ore tenus, its judgment is presumed correct and will not be disturbed unless plainly and palpably erroneous. League v. McDonald, 355 So.2d 695 (Ala.1978). As stated previously, the issue of what notice, if any, the Morgans had was disputed and the trial court listened to the testimony of both parties in this regard. On appeal, this Court indulges all favorable presumptions in favor of the evidentiary conclusion reached in the trial court, and will not disturb such conclusion unless it is palpably erroneous or manifestly unjust. Decker v. Hays, 282 Ala. 93, 209 So.2d 378 (1968). In light of the testimony as reflected in the record and the presumptions favoring the trial court's finding, we cannot say that the court's conclusion was palpably erroneous or manifestly unjust. The evidence was sufficient to find that the Morgans were, in fact, without notice of Douthit's lien.
Douthit requests that we consider additional facts pertaining to the notice issue at hand. This same request was made to the Court of Civil Appeals and apparently rejected. The facts Douthit wishes to be considered here are those contained in an affidavit by Mrs. Morgan which tended to support the petitioner's motion for summary judgment prior to the trial of the case. The affidavit, or the facts contained therein, was never brought forward by Douthit during the trial of the case, so far as the record reflects. Since this additional evidence was not offered at the trial of this cause, there was nothing preserved in the record and, therefore, that evidence is not before us for review. Lipscomb v. Tucker, 294 Ala. 246, 314 So.2d 840 (1975). Even if the evidence were to be considered by this Court, it would not alter our decision as to the holding of the Court of Civil Appeals.
Douthit also asserts that the Morgans were not innocent purchasers because they still owed $7,500.00 of the contract purchase price at the time they gained actual notice of his lien. The Court of Civil Appeals found that the evidence of the Morgans' executed contract of sale, the *553 payment of a substantial part of the total purchase price, the delivery of a deed to the property, and their taking possession of the property, all prior to the date they received actual notice of the lien, was sufficient to support a finding that the Morgans were innocent purchasers. We agree. Craft v. Russell, 67 Ala. 9 (1880), established the rule that one claiming to be an innocent purchaser, without notice, must show that he purchased in good faith and parted with value by paying money or other valuable things, or assumed a liability or suffered a detriment. This appears to be a rather liberal standard by which to determine at what point one becomes a purchaser for value. Thus, payment of a substantial sum, along with the assumption of a substantial obligation, and the binding of oneself to a contract to pay, could be a sufficient detriment or valuable consideration to establish innocent purchaser status.
The case of Wise v. Quina, 174 So.2d 590 (Fla.Dist.Ct.App.1965), cited by respondents, is close in point to the present issue. In Wise, the purchasers of land paid $8,000.00 of a $34,000.00 purchase price and had executed a promissory note for the balance still owing before they learned of an adverse claim to an easement on the purchased property. The Florida appellate court held that the fact that the purchasers were irrevocably bound to pay the balance of the purchase price was sufficient to support a finding that they were bona fide purchasers. The court noted that although the purchasers could elect to default on the instruments, they had no legal right to revoke their promise and were bound to pay. This is the general rule in other jurisdictions as well. 77 Am.Jur.2d, Vendor and Purchaser, § 706 (1975).
The general rule in Alabama is that, in the absence of fraud, relievable mistake, insolvency, or non-residence of the vendor, a vendee in peaceful undisturbed possession of land under and by virtue of a valid conveyance containing covenants of title and general warranty, is not entitled to a rescission of the contract, or a return of the purchase money or any part thereof, on the ground of a defect in the title of his vendor. Alger-Sullivan Lumber Co. v. Union Trust Co., 218 Ala. 448, 118 So. 760 (1928); Fields v. Clayton, 117 Ala. 538, 23 So. 530 (1897). In the present case, although the Morgans could have chosen to default under the contract with Aldridge for the purchase of the property, they were irrevocably bound to Aldridge for the purchase price and bound on the indebtedness to Valley Savings and Loan Association of over $20,000.00. In addition, the Morgans had paid $4,000.00 of the purchase price, received a general warranty deed to the property, and taken possession of the property prior to any actual notice of Douthit's lien. The Court of Civil Appeals found that the Morgans were so far bound in their contract with Aldridge, prior to actual notice of Douthit's lien, as to make them innocent purchasers, and we find no error in this conclusion. However, we recognize that under facts and circumstances different from those in the present case, the status of innocent purchaser may not be found.

SECOND ISSUE
The Court of Civil Appeals held that the mortgage of the Morgans to Central Bank conveyed title free from the lien of Douthit, even though the bank, having taken the mortgage subsequent to the lien, was on constructive notice of the lien. Douthit's lien statement was filed September 16, 1982. The mortgage was executed September 17, 1982, and recorded September 20, 1982. As noted previously, Code 1975, § 35-11-211, states that a mechanic's lien shall have priority over all other liens, mortgages, or encumbrances created subsequent to the commencement of work on the building. The policy of the statute is "to secure to the materialman and the laborer the just reward of their material and labor ... based upon the general equitable principle that one should not enjoy the benefit thereof without just compensation therefor." Lily Flagg Building Supply Co. v. J.M. Medlin & Co., 285 Ala. 402, 232 So.2d 643, 646 (1970). The Court of Civil *554 Appeals noted that, by the terms of the statute, Douthit's lien had priority over a subsequently executed mortgage by the Morgans to Central Bank. This result is supported by the case of Gamble's, Inc. v. Kansas City Title Insurance Co., 283 Ala. 409, 217 So.2d 923 (1969), and Schwab v. Estes Lumber Co., 225 Ala. 452, 143 So. 829 (1932). However, on rehearing, the court found that to disallow the bank from taking the mortgage from the Morgans free from the lien of Douthit, as prescribed by statute, would directly conflict with the longstanding rule in Alabama that one who purchases from a bona fide purchaser, without notice, succeeds to the right of his vendor, and regardless of actual or constructive notice on his part can protect himself by interposing his vendor's want of notice as a defense. Barron v. Hughes, 202 Ala. 207, 80 So. 29 (1918). It is stated in 77 Am.Jur.2d, Vendor and Purchaser, § 718 (1975), that: "[T]he purpose of this rule is to prevent a stagnation of property and to protect the first purchaser, who, being entitled to hold and enjoy, must be equally entitled to sell. Otherwise, a bona fide purchaser might be prevented from selling his property for full value." Based on this rationale, the court held that because the Morgans were innocent purchasers for value, without notice, the bank, as a purchaser from the Morgans, was entitled to assert this same status, despite the fact that it took the mortgage with constructive notice of Douthit's lien.
We must decide whether the Court of Civil Appeals was correct in its reliance upon this rule of law to the exclusion of the express language found in the mechanic's lien statute. We hold that the court was incorrect.
Discussing the accepted rules of statutory construction in Alabama, this Court in Mazel v. Bain, 272 Ala. 640, 642-43, 133 So.2d 44, 46 (1961), said:
"This court said in Floyd v. Rambo, 250 Ala. 101, 33 So.2d 360, 362:
"`The general policy of the statute is to secure to the materialman and laborer a just reward of his labor and material and is based upon the general equitable principle that one should not enjoy the benefits thereof without making just compensation therefor....' And in our late case of Wilkinson v. Rowe, 266 Ala. 675, 98 So.2d 435, 437 [(1957)], we quoted from Montandon & Co. v. Dean, 14 Ala. 33 [(1848)], as follows:
"`... This act should receive a liberal contruction, as it is but an extension of the doctrine of lien, so much favored by the courts, as consonant with every principle of equity and justice as applied to personal property. Cross on Law of Lien, 24. The intention of the act was, to give to the mechanic who had expended his labor and furnished materials in improving the ground of another, a prior right of satisfaction by a lien upon the building, and the interest of the party contracting for its erection, in the land so improved...' [Emphasis supplied in Mazel.]
"It is argued that since a mechanic's lien is of statutory origin and `is in derogation of the common law, it is to be strictly construed, all matters of substance of necessity to be complied with.' Tanner v. Foley Bldg. & Mfg. Co., 254 Ala. 476, 48 So.2d 785, 787 [(1950)]. This strict construction is not applied to the theory of the statute but to the technical requirements of the statute to make the lien effective, such as, certainty as to the description, allegations that the claim has been properly filed in the office of the probate judge, and that the wording of the claim and the notices substantially follow the statute."
Guided by this standard, we have no trouble finding that the Legislature clearly intended to give a mechanic's lien a preference over subsequent mortgages. Section 35-11-211 expressly states that "[s]uch lien as to the land and buildings or improvements thereon, shall have priority over all other liens, mortgages or incumbrances created subsequent to the commencement of work on the building or improvement...." (Emphasis added.)
*555 The rule in Alabama, consistent with our status as a "title" state with respect to mortgages, is that a mortgagee, acquiring the estate as security for a contemporaneous debt, is also a purchaser. Thames & Co. v. Rembert's Adm's., 63 Ala. 561 (1879). Regardless of whether the mortgagee has a dual status, the statute clearly states that a mechanic's lien has priority over all mortgages created subsequent to the acts giving rise to the lien. Any other result would be in direct conflict with the express terms of the statute and would hardly be consistent with the policy of the statute "to secure to the materialman and laborer a just reward of his labor and material." Floyd v. Rambo, 250 Ala. 101, 104, 33 So.2d 360, 362 (1948).
Therefore, we give effect to the express terms of § 35-11-211 and hold that Central Bank does not take free of the lien.
Finally, we recognize, as did the Court of Civil Appeals in its original opinion in this case, the difficulty of enforcing Douthit's lien; however, we also agree with that court's conclusion that the matter of enforcement is not before us and that that question must be addressed by the trial court upon remand.
The judgment of the Court of Civil Appeals is affirmed in part, and reversed in part, and the cause remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, FAULKNER, JONES, ALMON, SHORES and BEATTY, JJ., concur.
EMBRY and ADAMS, JJ., concur in part and dissent in part.

ON APPLICATION FOR REHEARING
TORBERT, Chief Justice.
Appellant, Douthit, asks us to decide the issue of what happened to his lien when the prior mortgagee, Aldridge, foreclosed on the property. In our original deliverance we did not address the issue because we believed it to be a matter of enforcement which should first be addressed by the trial court upon remand. However, the Court of Civil Appeals had addressed the question and we now deem it appropriate to also address it.
The Court of Civil Appeals correctly held that the "lien and rights of the lienholder are limited to the extent of the right, title and interest of the owner with whom he contracted." Douthit v. Wilks, 480 So.2d 544 (Ala.Civ.App.1984) (quoting Staley v. Woodruff, 257 Ala. 571, 60 So.2d 384 (1952)). That court also correctly held that the lien extended to the right, title, and interest of the Wilkses in the property at the time of the commencement of work. At that time the Wilkses owned the equity of redemption. Subsequently the prior mortgage was foreclosed and the Court of Civil Appeals seemed to say that because Douthit did not perfect the lien until after foreclosure "there remained only a statutory right of redemption available to Douthit to attach his lien." 480 So.2d at 546. We believe the Court of Civil Appeals erred in this aspect of its decision.
The lien attached at the time the work on the house began, Lily Flagg Building Supply Co. v. J.M. Medlin & Co., 285 Ala. 402, 232 So.2d 643 (1970), subject, however, to being lost if not perfected. Code 1975, § 35-11-213. In Staley the mortgagee, Staley, foreclosed on the mortgage after a materialmen's lien had attached and then sold the property to a third party. With respect to the transactions which took place after the lien attached, this Court said:
"We deem it appropriate to point out that these subsequent transactions could have no bearing upon the rights of the appellees. It was the state of the title to the property as it existed at the time the labor and materials were contracted to be furnished that fixed the rights of the parties."
Staley, 257 Ala. at 574, 60 So.2d at 386.
Therefore, the Court of Civil Appeals erred in holding that the lien attached to the Wilkses' statutory right of redemption upon foreclosure. The lien attached to the equity of redemption, because *556 that was the extent of the Wilkses' title at the time the lien attached. The subsequent transactions did not affect the rights of Douthit. The only remaining issue, which we have addressed in our original deliverance, is who has priority with respect to any proceeds upon the enforcement of the lien.
APPLICATION OF APPELLANT GRANTED; APPLICATION OF APPELLEES DENIED; OPINION EXTENDED.
MADDOX, FAULKNER, ALMON, SHORES and BEATTY, JJ., concur.
ADAMS, J., concurs in part and dissents in part.
ADAMS, Justice (concurring in part, dissenting in part).
I concur in that portion of the majority's opinion which holds that the Morgans were bona fide purchasers for value, without notice, even though they acquired actual notice of the mechanic's lien prior to full payment of the contract purchase price, but I dissent as to that portion of the opinion which holds that Central Bank's mortgage does not have priority over the mechanic's lien because the bank had constructive notice of it, thus, disallowing the bank to stand in the shoes of the Morgans, who were bona fide purchasers for value.
Once again, we have departed from our older precedents, seemingly without substantial reason to do so. See Gibson v. Henderson, 459 So.2d 845 (Ala.1984); Durant v. Hamrick, 409 So.2d 731 (Ala.1982). I know of no field of law in which the doctrine of stare decisis is more important than the real property field.
Prior to our decision in this case, Alabama followed the general rule that a purchaser (and this includes a mortgagee) who purchases from a bona fide purchaser for value receives all the protection of a bona fide purchaser for value, even though such a purchaser may have constructive or actual notice of a defect in the title to the conveyed property. This has been the rule in Alabama as far back as Wilkinson v. Solomon, 83 Ala. 438, 3 So. 705 (1888). This rule was followed in Jefferson County v. Mosley, 284 Ala. 593, 226 So.2d 652 (1969), and Barron v. Hughes, 202 Ala. 207, 80 So. 29 (1918).
Not only can the purchaser for value enjoy the property free from an adverse claim of which he had no notice at the time of his purchase, but he may also transfer his rights to others, and the fact that the secondary purchaser had notice is immaterial, so that a secondary purchaser with notice who purchases from a purchaser without notice, would have all the rights of the latter. The rule is based on a widely held policy that favors the free alienability of property interests.
It is a general rule that the remote purchaser of real estate whose purchase does not fulfill all the requisites for protection due a bona fide purchaser may nevertheless be afforded protection because of his purchase from one who is entitled thereto. The purpose of this rule is to prevent a stagnation of property and to protect the first purchaser, who, being entitled to hold and enjoy, must be equally entitled to sell. Otherwise, a bona fide purchaser might be prevented from selling his property for full value. In other words, the vendee of the bona fide purchase is not favored for his own account, but for the sake of him from whom he purchased. It is wholly immaterial of what nature the outstanding interest is, whether it is a lien or encumbrance, or a trust, or any other claim. [Emphasis supplied.]
77 Am.Jur.2d Vendor and Purchaser, § 718 (1975). See, also, 8 Thompson, Real Property, § 4479 (1940); Tiffany, Real Property, § 1307 (3d ed. 1939).
This rule is consistent with our rule that a timely filed mechanic's lien does not relate back to the time of performance of labor so as to be enforceable against intervening purchasers who purchase without actual or constructive notice of the mechanic's lien. Guaranty Pest Control, Inc. v. Commercial Investment & Development Corp., 288 Ala. 604, 264 So.2d 163 (1972); Grimsley v. First Avenue Coal & Lumber *557 Co., 217 Ala. 159, 115 So. 90 (1928); Martin v. Clarke, 154 Ala. 425, 46 So. 232 (1908). This rule was modified in Starek v. TKW, Inc., 410 So.2d 35 (Ala.1982), giving a mechanic an absolute priority over subsequent purchasers during the recording period if the transaction involved construction of a new structure. This Court imposed constructive notice on all purchasers of new structures during the statutory period for the filing of a mechanic's lien. The original rule was retained as to existing structures.
The rule followed in the present case only allows a mortgagee, who is also a secondary purchaser from a primary purchaser that purchased the mortgaged property without actual or constructive notice of the lien of the mechanic, to assume and assert all of the rights of the primary purchaser-vendee. This rule allows this result whether the secondary purchaser be mortgagee or non-mortgagee. The priority given to the secondary mortgagee-purchaser is recognized merely to protect the right of the primary purchaser, who is entitled to hold and enjoy the property free from the mechanic's lien and should have an equal right to sell the property free from the lien. The secondary mortgagee-purchaser is not being favored by virtue of this status as a purchaser, but is being favored in order to protect the primary purchaser's right to sell the property free from the mechanic's lien.
This rule does not grant to the mortgagee-purchaser the absolute status as a purchaser in every instance. It is only when there is an intervening bona fide purchaser without notice from whom the secondary mortgagee-purchaser takes his interest, that this limited priority is recognized. The mortgagee-purchaser cannot assert innocent purchaser status, on its own account, to defeat the mechanic's statutorily recognized lien. Clearly, such a holding would circumvent the clear import of the lien statute. For example, a homeowner sells his improved property. The homeowner has failed to pay the contractor for the improvements to the property. The buyer purchases the home without actual or constructive notice of the previous improvements performed on the home. The buyer, as an innocent purchaser, for value, without notice, takes free of any mechanic's lien not perfected at the time of purchase. If the buyer gets a loan for the purchase of the home and secures that loan with a mortgage, the mortgagee can interpose the buyer's defense to the mechanic's lien. The mortgagee could assert the buyer's rights regardless of the mortgagee's actual or constructive notice of the lien.
The mortgagee-purchaser could assert the rights of the buyer only if the buyer himself were without actual or constructive notice of the lien at the time of his purchase. In the case of a new home, the mortgagee would never prevail, because the initial purchaser is held to be on constructive notice throughout the permissible recording period of the mechanic's lien. See Starek v. TKW, Inc., supra. In the case of an existing structure, the facts of each case would determine whether the initial purchaser had actual or constructive notice of the lien.
In a second example, if a homeowner contracts, but fails to pay, for work performed on his home, and the homeowner gives a mortgage prior to the perfection of a lien by the contractor for his work, the mortgagee would not be afforded a priority ahead of the lienholder. The homeowner would be on actual notice of the lien and the mortgagee would derive no right from the homeowner that would give him priority ahead of the holder of the mechanic's lien. The mortgagee is given no priority as a primary purchaser. This conclusion is supported by the lien statute. This rule would only rarely allow a subsequent mortgagee priority over a mechanic or materialman, and this limited exception is consistent with previous holdings of this Court.