ALMON, Justice.
The plaintiff appeals from a judgment on a jury verdict for the defendant in a per *587 sona] injury action. Brittney Pilkington, a six-month-old infant, was injured when hot tea spilled on her while she and her family were dining at the premises of the Peking Chinese Restaurant, Inc. (“the Restaurant”). By and through her mother as next friend, Brittney filed a complaint alleging that the Restaurant[1] “owed a duty to keep its premises reasonably safe, [to] protect the plaintiff against any unreasonable risk of injury, or to warn plaintiff (or plaintiffs guardian) of any known danger, but breached such duty by placing a pot of hot tea within plaintiff’s reach.”
The Restaurant answered, inter alia, that it had not been negligent and that “the injuries sustained by the Plaintiff were proximately caused by the negligence of one other than the Defendants.” The essence of Brittney’s claim was that the waitress had negligently left the pot of hot tea within Brittney’s reach, and that Brittney had grabbed the handle and pulled the pot off the table and on top of herself. The essence of the defense was that Brittney’s father had negligently spilled the tea onto Brittney. The court held a trial of the action and submitted the claims and defenses to the jury, which returned a verdict for the Restaurant. The issues for review are (1) whether the trial court erred in not dismissing or directing a verdict against the Restaurant’s affirmative defense; (2) whether the trial court erred in refusing to charge the jury on sudden emergency, on the theory that Mr. Pilkington had reacted to Brittney’s grabbing the pot handle; (3) whether the trial court erred in refusing to charge the jury as to a landowner’s duty to children regarding a dangerous condition on the property; and (4) “whether the trial court erred in overruling Pilkington’s objections to questions attempting to show Samantha Pilkington was not concerned with the welfare of her child.”
The Pilkingtons sat in a booth, that is, a table against a wall with benches on two sides. Mrs. Pilkington and her two-year-old son Robby sat against the wall, and Mr. Pilkington and Brittney’s grandmother, Sara Bradley, sat on the outside or open end of the booth. Brittney was in an infant seat placed horizontally on a chair at the end of the table. After pouring tea for Mrs. Bradley, the waitress set the pot on the table. There was evidence that, immediately after the waitress set the pot down, Brittney reached for the handle and started pulling the pot toward her. Mrs. Bradley and Mrs. Pilkington testified that Mr. Pilk-ington said “No, Brittney,” but that she pulled the pot onto herself before he could stop her.
The principal evidence that the accident was caused by the negligence of Mr. Pilkington came from the testimony of Laura Gaskins, a hostess employed by the Restaurant. Her testimony, given by deposition and introduced at trial, included the following:
“Q. Now, as you were standing here bussing this table, did you observe any of the activities going on over here at the Pilkingtons’ booth?
“A. I just kept watching them all the time because I was afraid that the baby was going to fall from the chair. That’s why I kept an eye on the baby. But nothing, except for when the baby reached over for the tea.
[[Image here]]
“Q. Did you ever see anyone from the table pour any tea out of the pot?
“A. No. I think that’s what the father was fixing to do. He was either reaching for the tea pot or behind it and I guess he was fixing to serve him some and knocked it over.
“Q. Were you looking at the child when the child was burned by the tea?
“A. I wasn’t looking at the child. I was just looking over towards that table from my peripheral vision.
“Q. Did you ever see Mr. Pilkington reach for the tea pot?
“A. Yes, sir, I did.
“Q. What, if anything, happened after Mr. Pilkington reached for the tea pot?
*588 “A. It just spilled on top of the baby. And then the grandmother jumped up and grabbed the baby and tore the clothes off of it and they ran outside.
“Q. Did the tea pot fall off the table onto the baby?
“A. No.
“Q. Describe, if you will, how the tea got from the pot onto the baby.
“A. It just knocked over and just like rolled from the table onto her, just spilled from the table onto her.
“Q. What rolled onto the baby, the hot tea?
“A. The hot tea.
“Q. But the pot didn’t roll onto the baby?
“A. No.”
The first issue is based on the plaintiffs assertion that Mrs. Gaskins’s evidence would not support a finding that the accident was caused by Mr. Pilkington’s negligence. This assertion is based on the alleged contradiction between Mrs. Gaskins’s answer to the first question quoted above, that she had observed “nothing, except for when the baby reached over for the tea,” and her later testimony that she had seen Mr. Pilkington knock the tea pot over and spill the hot tea on Brittney. The plaintiff, however, does not cite any authority in support of this argument, except Ala.Code 1975, § 12-21-12, the substantial evidence rule. Mrs. Gaskins’s testimony does provide substantial evidence from which the jury could find that Mr. Pilkington was negligent and that his negligence caused the accident. Any contradiction between the first answer quoted above and the remainder of her testimony created only a question for the jury as to her credibility and the weight to give her testimony. Similarly, the conflict between Mrs. Gaskins’s testimony and the Pilkingtons’ testimony created a question for the jury. Trans-South-Rent-A-Car, Inc. v. Wein, 378 So.2d 725 (Ala.1979); Decker v. Hays, 282 Ala. 93, 209 So.2d 378 (1968).
The second and third issues relate to the failure to give the plaintiff’s requested instructions on the doctrines of sudden emergency and dangerous instrumentality. In order to address these issues, we first quote the following from the trial court’s charge:
“[T]he duty of the owner of a premises to an invitee is to be reasonably sure that he is not inviting another into danger and to exercise ordinary care to render and keep the premises in a reasonably safe condition.
[[Image here]]
“Now, the degree of caution which is necessary to reach the required standard of reasonable and ordinary care to be exercised may vary according to the circumstances and according to the capacity of the person with respect to whom such duty exists, and ... the duty ... of exercising reasonable care toward children must be calculated upon the fact that children are expected to act according to their known characteristics and impulses....
[[Image here]]
“Now, in this case it is the plaintiff’s position, Ladies and Gentlemen, that the plaintiff, Brittney Pilkington, was injured as the direct and proximate result of the negligence of the defendant. Or, in the alternative, that the defendant was negligent and that the defendant’s negligence combined and concurred with the negligence of a third person, if you, the jury, find that there was a third person whose negligence proximately caused' or contributed to the injuries of the [plaintiff]. If one is guilty of negligence which concurs or combines with the negligence of another person to produce an injury then each negligent person would be liable for any resulting injury....
[[Image here]]
“First of all, if you find from the evidence that the plaintiff has reasonably satisfied you that the employees at the Peking Restaurant were negligent in and about the service of the hot tea that is in issue in this case and that that negligence proximately caused the injuries complained of and if you go on to find that Brittney’s father himself was negligent, then if you find that his negligence combined and concurred at that point in *589 time with the negligence of the defendant to produce the injury then either of those two defendants could by law be liable.
“Now, under our law any negligence on the part of a parent cannot be imputed to, in other words, visited upon the minor child if you find that that minor was injured as a direct and proximate result of some negligent act on the part of defendant that may have combined and concurred with a negligent act on the part of that child’s parent.”
The plaintiff requested a charge pursuant to instruction 28.15 of the Alabama Pattern Jury Instructions — Civil (1974), but the trial court refused the request. That instruction reads:
“If a person, without fault of his own, is faced with a sudden emergency, he is not to be held to the same correctness of judgment and action as if he had time and opportunity to fully consider the situation, and the fact, if it be a fact, that he does not choose the best or safest way of escaping peril or preventing injury is not necessarily negligence, but the standard of care required in an emergency situation is that care which a reasonably prudent person would have exercised under the same or similar circumstances.”
The trial court did not err in refusing to give this instruction. Under the trial court’s instructions, the jury was instructed to find the Restaurant liable only if its negligence had caused the accident, whether solely or in combination and concurrence with negligence by Mr. Pilkington. A “sudden emergency” charge could have affected only the question of whether negligence by Mr. Pilkington had combined with negligence by the Restaurant; it would not have affected the initial question of whether the Restaurant was negligent. Thus, the general negligence instructions adequately covered the principles on which the Restaurant could be held liable, whether the jury found that Mr. Pilkington did not contribute to cause Brittney’s injuries, that he did contribute but was using due care under the circumstances created by the Restaurant’s negligent placement of the tea pot, or that he negligently contributed to the accident. “The [sudden emergency] doctrine is only available to explain why a party should not be held to the same strict accountability of ordinary care required of a reasonably prudent person acting under ordinary circumstances.” Stevens v. Floyd, 361 So.2d 1014, 1017 (Ala.1978). The question before the jury was not whether Mr. Pilkington should be held accountable for Brittney’s injuries, but whether the Restaurant should be held accountable. The finding implicit in the verdict was that the Restaurant was not negligent; it makes no difference whether the jury found that Brittney’s injuries were caused by Mr. Pilkington without any negligence by the Restaurant as a concurring cause or that her injuries were not the result of anyone’s negligence.
The trial court correctly instructed the jury that a parent’s negligence cannot be imputed to the child. Nunn v. Whitworth, 545 So.2d 766 (Ala.1989). Therefore, the failure to give the sudden emergency charge did not raise the possibility that the jury would find in favor of the Restaurant on the basis that Mr. Pilkington was contributorily negligent.
Similarly, the court did not err in refusing the requested instruction on the duty of a landlord toward a child regarding a dangerous instrumentality. The plaintiff requested an instruction pursuant to Instruction 31.11, Alabama Pattern Jury Instructions — Civil (1974), the “Dangerous Instrumentality Doctrine.” The “Notes on Use” appended to that instruction state that it applies when the plaintiff relies on the dangerous instrumentality doctrine. Brittney’s complaint simply alleged negligence.
Furthermore, the instruction in its terms applies to a duty owed to children who are trespassers or licensees, whereas Brittney was an invitee. See Tolbert v. Gulsby, 333 So.2d 129 (Ala.1976). Brittney’s attorney points out in his argument that this Court, in Collier v. Necaise, 522 So.2d 275 (Ala.1988), adopted the dangerous instrumentality standard in a case involving a child who was an invitee. How *590 ever, that case held simply that a premises owner cannot be held to a higher standard toward a trespassing child than toward a licensee or invitee. The duty owed to an invitee is the same, as regards this case at least, as the duty under the dangerous instrumentality doctrine: a duty to make reasonable efforts to make the premises safe and to warn the invitee (in this case, the invitee’s parents) of any dangers that cannot be made safe and that are not obvious.[2] Thus, the trial court did not err in refusing the “dangerous instrumentality” instruction.
The fourth issue is whether the trial court erred in overruling the plaintiffs objection to the following question asked of Mrs. Pilkington' during cross-examination:
“Q. When Brittney was asleep and you were playing with Robbie over here in the corner you weren’t concerned about [Brittney’s] safety, were you?”
The plaintiff characterizes this question as an attempt to show negligence by Mrs. Pilkington and to impute that negligence to Brittney. The Restaurant characterizes the question as a reply to questions asked by the plaintiff’s lawyer regarding how closely Mrs. Pilkington was watching the events at the other end of the table. We agree that the question is subject to that interpretation and that the trial court did not err in overruling the objection, especially in light of the court’s charge that a parent’s negligence cannot be imputed to the child. The scope and extent of cross-examination is vested in the sound discretion of the trial court, and its judgment based on rulings in that regard will not be reversed unless there has been abuse of that discretion. General Electric Co. v. Mack, 375 So.2d 452, 456 (Ala.1979). We find no abuse of the trial court’s discretion in this ruling.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.

. Additional fictitiously named defendants were described in the complaint, but no party was ever substituted for such a defendant. Thus, the Restaurant was the only defendant.

. Although the instruction quoted above on the duty to an invitee omitted the duty to warn, Brittney’s attorney objected to that omission before the jury retired. In response to that objection, the trial court further instructed the jury: "[T]he duty owed to an invitee is to maintain the premises in a reasonably safe condition or in the event the premises is not maintained in a reasonably safe condition because of some defect or danger then it’s the premises owner’s duty to warn the invitee of any danger or defective condition.” There was evidence that the waitress said "Hot tea" as she set the pot down.