ALMON, Justice.
This appeal is from a summary judgment, made final pursuant to Rule 54(b), Ala.R.Civ.P., in favor of certain defendants in an action to establish and enforce a materialman’s lien. The defendants who are appellees here are successors in interest to a mortgagee which, after the statement of lien and this action were filed, foreclosed its mortgage on the subject property and took a foreclosure deed from the mortgagor. The question presented is whether the appellees are entitled to a summary judgment on the claim that the asserted lien is superior to their interest in the property.
Lucas Construction, Inc., and James C. Lucas (hereinafter referred to collectively as “Lucas”) brought an action against Robert L. Torres and Marine Contractors, Inc., seeking to establish and enforce a material-men’s lien on a house and lot owned, at the time the complaint was filed, by Torres or by Marine Contractors, Inc:, of which Torres apparently was the sole shareholder. Lucas amended the complaint to add South Baldwin Bank as a defendant. South Baldwin filed a motion for summary judgment. The trial court granted South Baldwin’s motion and entered judgment accordingly. Lucas again amended the complaint, naming as additional defendants Dieter M. Hugel; Dieter M. Hugel, an Alabama joint venture; Norman R. Shirley; Patricia- A. Shirley; Horizon Construction Corporation of Northwest Florida, Inc.; and Sailboat Bay Development Corporation (hereinafter collectively referred to as “the Hugel defendants”). The Hugel defendants filed a motion for summary judgment. The trial court granted that motion and, pursuant to Rule 54(b), A.R.Civ.P., entered a final judgment. Lucas appeals from that judgment.
In the autumn of 1979 Lucas and Torres contracted for Lucas to construct a house on a lot owned by Torres in Baldwin County.[1] Lucas supplied materials and labor toward the construction of the house until March 14, 1980. On June 6, 1980, Torres ' mortgaged the house and lot to South Baldwin. South Baldwin recorded its mortgage on June 10, 1980. On August 15, 1980, Lucas filed a lien statement in the Baldwin County Probate Court and commenced this action, naming only Torres and Marine Contractors as defendants.
According to the uncontradicted allegation of the complaint as last amended,
“South Baldwin Bank foreclosed on the mortgage previously executed to it by Robert L. Torres and a foreclosure deed was executed by Robert L. Torres to South Baldwin Bank dated December 29, 1980, and recorded in Real Property Book 82, Page 1170.”
The deed is not in the record, nor is there any indication of what consideration passed to Torres. However, the Hugel defendants stated in their brief in support of their summary judgment motion that South Baldwin foreclosed its mortgage and was the purchaser at the foreclosure sale on December 29, 1980.
On April 20, 1981, Lucas added South Baldwin as a defendant in this action. The trial court entered summary judgment in favor of South Baldwin on July 1, 1981, because, the court determined, South Baldwin’s mortgage was “superior and paramount” to Lucas’s lien. Because South Baldwin is not a party to this appeal, we express no opinion as to the correctness of the summary judgment for South Baldwin except so far as is necessary in the discussion of what interest its grantees took. We do note that the summary judgment for *340 South Baldwin did not include any Rule 54(b) language of finality and so, for all that appears in the record before us, that judgment is not yet final.
On November 24, 1981, South Baldwin conveyed the property to Norman Shirley by warranty deed. On April 22, 1982, the following transactions took place: Norman and Patricia Shirley conveyed the property to Horizon by warranty deed; Horizon conveyed the property to Sailboat Bay by warranty deed; Dieter M. Hugel, an Alabama joint venture, conveyed its interest (received from Torres and his wife by quitclaim deed on February 26, 1981) to Sailboat Bay; and Sailboat Bay executed a mortgage on the property to Dieter M. Hugel, an Alabama joint venture. On June 9, 1987, Lucas amended his complaint to add those parties as defendants to his prayer that the lien be declared and the property sold for its satisfaction. The Hugel defendants argued in their motion for summary judgment that, because the court had held that South Baldwin’s mortgage was superior and paramount to the alleged lien and because their interest in the property had derived from that mortgage, their interest was also superior and paramount to the lien. The trial court entered summary judgment for the Hugel defendants, without a written order stating its reasons.
Materialmen’s liens are governed by Ala. Code 1975, § 35-11-210, et seq. Section 35-11-210 provides that every person or corporation who performs any work or labor upon any building or improvement shall have a lien on the building or improvement and on the land on which the building or improvement is situated. Ala.Code 1975, § 35-11-215, states that the lien will be deemed lost unless a lien statement is filed in the probate court within six months after the last item of work or labor has been performed or the last item of any material has been furnished. Ala. Code 1975, § 35-11-221, provides a limitation of actions, requiring that any action for the enforcement of the lien must be commenced within six months after the maturity of the entire indebtedness. Finally, when suit is filed, all persons interested in the property charged*with the lien may be made parties, and those that are not made parties shall not be bound by the judgment or proceedings. Ala. Code 1975, § 35-ll-223(a).
The Hugel defendants contend that Lucas did not comply with the statutory mandates and, therefore, does 'not have an enforceable lien. This argument is not well taken.
It is undisputed that Lucas filed a statement of lien and filed suit within six months of the completion of performance. The Hugel defendants argue, however, that Lucas’s lien fails because Lucas did not name South Baldwin as a defendant until more than six months after the completion of performance.
Section 35-ll-223(a) was discussed by this Court in Starek v. TKW, Inc., 410 So.2d 35 (Ala.1982):
“While the holder of the legal title must be a party, Lily Flagg Building Supply Co. v. J.M. Medlin & Co., 285 Ala. 402, 232 So.2d 643 (1970); Sorsby v. Woodlawn Lumber Co., 202 Ala. 566, 81 So. 68 (1919); Hughes v. Torgerson, 96 Ala. 346, 11 So. 209 (1892); Roman v. Thorn, 83 Ala. 443, 3 So. 759 (1888), the lien claimant has the option of joining the mortgagee or other parties who have an interest in the property. If he does not join them, however, they are not bound by the judgment. Lily Flagg Building Supply Co. v. J.M. Medlin & Co., 285 Ala. at 407-08, 232 So.2d at 648.”
410 So.2d at 36. It is clear, then, that Lucas was not required to name South Baldwin as a party to the original complaint in order to perfect his materialman’s lien.
There is no evidence of record as to when the debt for Lucas’s materials matured. It appears that he last supplied materials or labor on March 14, 1980. If the debt matured 30 days thereafter, as is a standard practice,[2] the six months for bringing this *341 action expired on October 14, 1980. As stated above, South Baldwin recorded its mortgage from Torres on June 10, 1980, but-Lucas did not add South Baldwin as a defendant until April 20, 1981.
“If a lien claimant desires his judgment to be superior to the interest of persons who have acquired their interest in the property after commencement of the work but prior to the filing of the lien statement, he must join them as parties when he files suit to enforce his lien within the six-month period, provided he has actual knowledge or constructive notice of the interest of such persons at the time he files his suit to enforce the lien.”
Lily Flagg Building Supply Co. v. J.M. Medlin & Co., 285 Ala. 402, 407, 232 So.2d 643, 648 (1970), citing Sorsby v. Woodlawn Lumber Co., 202 Ala. 566, 81 So. 68 (1919). Thus, the failure to join South Baldwin as a defendant within six months after the apparent maturity of the indebtedness provides at least an arguable basis for the summary judgment for South Baldwin as mortgagee.
The Huge! defendants contend that this failure to perfect the lien so as to make it superior to South Baldwin’s mortgage, especially as that failure is reflected in the summary judgment for South Baldwin, necessarily means that they, as successors in interest to South Baldwin, also took their interest free of the lien. Lucas responds by relying on Ex parte Douthit, 480 So.2d 547 (Ala.1985).
In Douthit, the Morgans purchased a house after Douthit had performed repairs on it, but before he filed a statement of his materialman’s lien in the probate court. After the lien statement was filed, however, they executed a mortgage to Central Bank. This Court affirmed the holding that the Morgans’ interest in the property was not subject to the materialman’s lien, because the evidence sustained the finding that they had purchased the house without actual knowledge or constructive notice of the lien. This Court reversed the judgment in favor of Central Bank, however, based partially on the general policies of the ma-terialmen’s lien statute of securing the ma-terialman or laborer the just reward for his labor and of requiring the one who enjoys the benefit thereof to pay just compensation therefor, and partially on the specific terms of the statute:
“[W]e have no trouble finding that the Legislature clearly intended to give a mechanic’s lien a preference over subsequent mortgages. Section 35-11-211 expressly states that ‘[s]uch lien as to the land and buildings or improvements thereon, shall have priority over all other liens, mortgages or encumbrances created subsequent to the commencement of work on the building or improvement.’
[[Image here]]
“Therefore, we give effect to the express terms of § 35-11-211 and hold that Central Bank does not take free of the lien.”
Id., 480 So.2d at 554-55 (emphasis in Douthit).
In this case, South Baldwin arguably occupies a position similar to that of the Morgans — a party who holds an interest against which a materialman’s lien has been lost for lack of timely perfection — and the Hugel defendants arguably occupy a position similar to that of Central Bank— the successors in interest to the party whose interest was not subject to the lien. In this case, however, the successors’ interest is not a mortgage or an encumbrance, but the fee. Although in Douthit Central Bank took a mortgage from the Morgans, the Hugel defendants trace their interest to a warranty deed from South Baldwin. Thus, the literal terms of § 35-11-211, providing that a materialman’s lien has priority over subsequently created mortgages or encumbrances, are not precisely applicable here.
Of course, this Court has consistently extended the provisions of § 35-11-211 and its predecessors to a purchaser as well as to an encumbrancer, so long as the pur *342 chaser takes with actual knowledge or constructive notice of the lien and the lien is timely perfected. See, e.g., Douthit, Starek, and Lily Flagg, all supra; Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90 (1927). To extend the second holding in Douthit to purchasers as well as to mortgagees, however, would make its first holding virtually meaningless. The first holding was that the Morgans took free of the lien; the second holding was that their mortgage to Central Bank was nevertheless subject to the lien. If we now accept Lucas’s argument that South Baldwin, due to the second holding in Douthit, could not convey an interest free of the lien, the effect, as applied to the facts of Douthit, would be that the Morgans could have held the property without threat of forced sale by the lienor, but that they could not have sold it without the possibility of forced sale reattaching.[3]
Such a conclusion might properly follow from the policy of providing compensation to mechanics and materialmen for their improvements to property. Before deciding this case on such an extension of Douthit, however, we examine the facts of our case more closely. The fact of the matter is that South Baldwin did not simply transfer its mortgage; it foreclosed, purchased at the foreclosure sale, and conveyed the interest it acquired as foreclosing purchaser.
This Court has held that a holder of a mortgage that is superior to a mechanics’ lien who forecloses and purchases at the foreclosure sale with notice of the lien takes his interest subject to the lien. In Hanchey v. Hurley, 129 Ala. 306, 310, 30 So. 742, 743 (1900), the Court observed, “By the purchase [at foreclosure] it [the mortgagee] extinguished the mortgage debt, to the extent of the sum bid, and destroyed the lien of the mortgage.” The real meaning of the Hanchey opinion is somewhat obscure because it was written by a Justice who was dissenting from the majority’s view of the case. Hanchey had performed repairs under a contract with Mr. W.A. Hurley at a time when the property was in Mrs. Hurley’s name. Hanchey sued the National Building & Loan Association, which had foreclosed its mortgage and had purchased at the foreclosure sale. Hanchey alleged that Mrs. Hurley was es-topped from asserting her title to defeat the lien because she had had notice of the repairs and had allowed them to proceed. The dispute between the dissenting Justice and the majority was whether this alleged estoppel could give constructive notice to the National Building & Loan Association, as foreclosure purchaser, of the alleged lien, and whether the complaint sufficiently raised the claim against the Association. It appears that the entire Court would have agreed that the foreclosure purchaser would have taken subject to the lien if there had been no problem with the notice to it of the lien. In the case at bar, it is undisputed that South Baldwin, when it foreclosed its mortgage on Torres’s property, had constructive notice, if not actual knowledge, of the lien filed against that property.
Hanchey was cited in Grimsley, supra, as holding the following:
“And in Hanchey v. Hurley, 129 Ala. 306, 311, 30 So. 742, the majority held the mechanic’s lien was superior to the mortgagee whose mortgage was in existence at the time of the repairs, but who fore *343 closed and became the purchaser at foreclosure sale after the materialman’s lien had been perfected, etc.”
217 Ala. at 162, 115 So. at 92. The Court discussed Hanchey in Mallory v. Agee, 226 Ala. 596, 147 So. 881 (1932), wherein it was held that a mortgagee who purchases at foreclosure sale does not hold free from equities in the property that arise after the execution of the mortgage but before its foreclosure, and thus that a servant’s house, built after the mortgage had attached, could be removed because of the mortgagor’s contract with the builder to that effect, even though the mortgagee had purchased at the foreclosure sale with the house on the property.
Thus, when South Baldwin purchased at the foreclosure sale with notice of the lien asserted by Lucas, it acquired the property subject to Lucas’s pending lien claim. When South Baldwin conveyed to the Hu-gel defendants, they similarly took subject to the pending claim.[4] Therefore, the Hu-gel defendants have not met their burden on motion for summary judgment of showing that there is no genuine issue as to any material fact and that, as a matter of law, they are entitled to judgment on the theory that the interest they acquired was not subject to the lien. The Hugel defendants’ motion for summary judgment did not raise any issue of the statute of limitations or laches, so the summary judgment cannot be affirmed on such a basis. We deem it premature to express any judgment as to any adjustment of the equities as between Lucas’s lien and the interest deriving from South Baldwin’s mortgage note, because no lien has been declared and because the facts regarding the values of the respective interests are not before us.
For the foregoing reasons, the trial court erred in entering summary judgment for the Hugel defendants. The judgment is reversed, and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, JONES, SHORES, HOUSTON, STEAGALL, and KENNEDY, JJ., concur.
APPENDIX
October 10, 1979 Lucas contracted with Torres/Marine Contractors, Inc., for Lucas to build a house on a lot owned by Torres. Work commenced.
March 14, 1980 Lucas ceased supplying materials and labor toward construction of the house; last work completed.
June 6, 1980 Torres mortgaged the house and lot to South Baldwin Bank.
June 10, 1980 South Baldwin Bank records its mortgage.
August 15, 1980 Lucas files lien statement in the Probate Court of Baldwin County.
August 15, 1980 Lucas files action against Torres and Marine Contractors.
December 29, 1980 South Baldwin Bank forecloses on mortgage; foreclosure deed executed by Robert L. Torres to South Baldwin Bank.
February 26, 1981 Torres conveys interest to Dieter M. Hugel by quitclaim deed.
April 20, 1981 Lucas adds South Baldwin Bank as a defendant.
July 1, 1981 Trial court enters summary judgment for bank.
November 24, 1981 South Baldwin conveys property to Norman Shirley by warranty deed.
April 22, 1982 Shirley conveys to Horizon by warranty deed.
Horizon conveys to Sailboat Bay by warranty deed. Dieter Hugel, an Alabama joint venture, conveys its interest to Sailboat Bay. Sailboat Bay executes a mortgage on the property to Hugel.
June 9, 1987 Lucas amends complaint to add Hugel defendants.

. For an aid in understanding the facts, see the chronological list of pertinent events attached hereto as an appendix.

. Torres’s defense includes allegations that the house was built as a joint venture. If that is the case, it could affect the maturity or even the existence of any debt. Torres also defends and *341 counterclaims on allegations of unworkmanlike performance. None of those questions is before us. For purposes of reviewing the summary judgment before us, we treat the claim of lien as pending according to Lucas’s allegations, affidavits, and evidence.

. Further problems present themselves with respect to a holding that a potential lien does not attach to the property in the hands of a holder of a superior interest and yet might do so if that party conveys the property. For example, how could the materialman keep the lien from being lost by operation of the statute of limitations? Of course, such problems are not presented in the present case. Lucas’s lien attached to the property even though it was subordinate to South Baldwin’s mortgage. If South Baldwin had not foreclosed its mortgage before Lucas brought his lien to judgment against Torres (assuming he does so), Lucas could have forced a sale of the property, either subject to the South Baldwin mortgage (see Davis v. Huntsville Production Credit Ass'n, 481 So.2d 1103 (Ala.1985)), or, if that mortgage was also foreclosed, Lucas would have taken the residue after South Baldwin’s mortgage note was paid. However, if South Baldwin had simply transferred its mortgage, would Douthit compel a holding that the mortgage in the transferee's hands was subordinate to the lien, on the ground that the transferee took with notice of the lien? Because we reverse on other grounds, we express no opinion as to whether Douthit should be extended so far.

. We note that Torres and his wife executed a quitclaim deed to Dieter M. Hugel, an Alabama joint venture, after the foreclosure sale. That deed effectively conveyed the Torreses’ statutory right of redemption, see Ala.Code 1975, § 6-5-230, and is another means by which Lucas’s alleged lien has entered the Hugel defendants’ chain of title.