565 So.2d 138 (1990)
BAILEY MORTGAGE COMPANY
v.
GOBBLE-FITE LUMBER COMPANY, INC.
88-372.
Supreme Court of Alabama.
May 25, 1990.
Rehearing Denied August 3, 1990.
Alicia J. Putt of Smyer, White & Putt, Birmingham, for appellant.
Robert H. Harris of Harris, Caddell & Shanks, Decatur, for appellee.

ON APPLICATION FOR REHEARING
ADAMS, Justice.
On application for rehearing, our original opinion of November 3, 1989, is withdrawn, *139 and the following opinion is substituted therefor.
Bailey Mortgage Company (hereinafter "Bailey Mortgage") appeals from a denial of its motion to set aside a default judgment. For the reasons set forth below, we find that the trial court's refusal to set aside the default judgment was in error, and, accordingly, we reverse and remand.

I. FACTS
C.W. Buffington was engaged in the construction and sale of houses in Huntsville. Gobble-Fite Lumber Company, Inc. (hereinafter "Gobble-Fite"), a seller of building materials and supplies, entered into an agreement with Buffington for credit purchases from Gobble-Fite. Under the terms of the agreement, charges for the credit sales were to be maintained separately with respect to building materials and supplies used in the construction of each house.
From August 11, 1987, until December 21, 1987, Buffington made credit purchases from Gobble-Fite that were incorporated into certain houses on nine lots. Buffington did not make the requisite payment for the credit purchases when the accounts came due and payable in December 1987 and January 1988.
Bailey Mortgage held construction loan mortgages on five of the parcels of real property. Four of the mortgages had been recorded prior to the initial delivery of any building materials or supplies by Gobble-Fite. When Buffington defaulted on his mortgage payments, Bailey Mortgage initiated foreclosure proceedings on the four parcels. On March 10, 1988, Bailey Mortgage foreclosed on these four mortgages. At the public sale, Bailey purchased the four parcels of property for $299,101.07.
On March 10, 1988, the same day as the foreclosure, Gobble-Fite filed a statement of lien claim on five of the parcels of real property in the office of the judge of probate. On April 28, 1988, Gobble-Fite filed a statement of lien claim on the remaining parcels.
On April 29, 1988, Gobble-Fite sued Buffington, Bailey Mortgage, Keith E. and Carol D. Ford,[1] and numerous fictitiously named defendants. Gobble-Fite sought a twofold recovery: it sought and obtained a judgment against Buffington for materials sold and established a materialman's lien, pursuant to Ala.Code 1975, § 35-11-210 et seq., against certain parcels of land. Each of the complaint's nine counts enumerated the basis and amount of Gobble-Fite's claim against a separate, specifically described parcel of property.
On June 28, 1988, upon Gobble-Fite's request, a default judgment was entered against Buffington and Bailey Mortgage. This judgment found the amount of Buffington's indebtedness to be $101,792.39, with interest, and established a materialman's lien against the described properties for that amount. Additionally, the judgment established Gobble-Fite's priority of lien with respect to any other liens or claims against, or interest in, the properties, including any interest held by Bailey Mortgage.
On July 25, 1988, Bailey Mortgage filed a motion to set aside the default judgment, pursuant to Rule 55(c), A.R.Civ.P. This motion was deemed denied by operation of law after the expiration of 90 days, pursuant to Rule 59.1, A.R.Civ.P. Bailey Mortgage now appeals from the denial of its motion to set aside the default judgment.

II. STANDARD OF REVIEW
The applicable standard of review in appeals arising from a trial court's order granting or denying a motion to set aside a default judgment is whether the trial court's decision constituted an abuse of discretion. Kirtland v. Fort Morgan Authority Sewer Service, Inc., 524 So.2d 600 (Ala.1988); Johnson v. Moore, 514 So.2d *140 1343 (Ala.1987). Although Rule 55(c) vests the trial judge with a considerable amount of discretion, a ruling on a Rule 55(c) motion must not be made without taking into consideration restrictions on the use of that discretion and by examining certain guidelines. Jones v. Hydro-Wave of Alabama, Inc., 524 So.2d 610, 613 (Ala.1988).
First, a trial judge, in exercising his discretion under Rule 55(c), must begin with the presumption that a litigant has a paramount right to defend on the merits and that, therefore, cases should be resolved on the merits whenever practicable. Jones v. Hydro-Wave of Alabama, Inc., supra; Kirtland v. Fort Morgan Authority Sewer Service, Inc. Finally, when exercising discretion under Rule 55(c), a trial court must consider the three-factor analysis enunciated by this Court in Kirtland v. Fort Morgan Authority Sewer Service, Inc., supra. As a threshold matter, we must look at whether the defendant has a meritorious defense. Following this determination, we must consider "whether the plaintiff will be unfairly prejudiced if the default judgment is set aside" and "whether the default judgment was a result of the defendant's own culpable conduct." Kirtland, supra, at 605.

III. WHETHER THE DEFENDANT HAS A MERITORIOUS DEFENSE
As recently stated in Ex parte Illinois Central Gulf R.R., 514 So.2d 1283 (Ala. 1987), and reiterated in Kirtland, "to meet the meritorious-defense element, the movant need not satisfy the trial court that the movant would necessarily prevail at a trial on the merits, only that the movant is prepared to present a plausible defense." 514 So.2d at 1288. A plausible defense is established by a viable legal theory supported by a factual basis. Bailey Mortgage claims that, despite its foreclosure on the four mortgages, it retains priority as a mortgagee by virtue of Ala.Code 1975, § 35-11-211. Before we can determine whether Bailey Mortgage has a meritorious defense established by a viable theory, and because of some confusion in our own case law, we must take a closer look at § 35-11-211 and at Alabama's law regarding the priority of mortgages and mechanic's and materialman's liens.
A. History of Mechanic's Liens
The first mechanic's lien law was passed in Maryland in 1791. Alabama followed and enacted its first mechanic's lien statute in 1821, for the protection of its materialmen and mechanics. The underlying premise of the early statute was to protect and maintain the interest of the materialman. The Court in Wimberly v. Mayberry & Co., 94 Ala. 240, 10 So. 157 (1891), recognizing that interest, stated:
"The purpose of the act was to intervene in favor of the mechanic or material man, and secure to him a paramount lien upon what he put upon the land in the way of `buildings or improvements or repairs thereto,' and prevent the operation of the common law, which, without the act, would give an existing mortgage or lien a priority over it. The property improved in such cases merges into the realty, but subject to the mechanic's lien to the extent of the value of the improvements. It was to protect those by whose labor and materials the value of the property was increased, as far as possible, to the extent of the enhanced value of the property."
94 Ala. at 246, 10 So. at 159.
The section of the statute concerning priorities remained virtually unchanged until 1933. Prior to 1933, a materialman had a definite advantage over a lender. The materialman was given absolute priority, and this put a severe burden on construction lenders. The plea of the construction lenders did not go unnoticed, however, and the legislature amended the priority section in 1933.[2] The effect of the amendment was *141 to reverse the priorities between the lien of a materialman and a prior recorded mortgage.[3]
However, even after the 1933 amendment the debate about the priorities between mechanic's liens and construction loan mortgages continued. See Comment, The Priority Problem Between Construction Mortgages and Mechanics' Liens in Alabama, 6 Cumb.L.Rev. 23 (1975) (article favors mechanic's liens). One commentator has fittingly recognized the clash between the priorities of mechanic's liens and construction mortgages:
"The conflict here is between the two basic underlying public policiesone favoring a lien for those whose work or material has contributed to the improvement, and the other favoring the security of contracts and prior recorded mortgages, the availability of construction financing, a vigorous building industry, more construction starts, and more jobs for artisans, workers, and building material manufacturers, etc."
Scholl, Priorities Between Mechanics' Liens and Construction Loan Mortgages in Alabama, 23 Ala.Law. 398, 431 (1962) (article favors construction lenders).
B. Steps to Perfection
Mechanic's and materialman's liens, being statutory creations, can be perfected only by complying with the requirements found in Ala.Code 1975, § 35-11-210 et seq. Lily Flagg Building Supply Co. v. J.M. Medlin & Co., 285 Ala. 402, 232 So.2d 643 (1970); Wilkinson v. Rowe, 266 Ala. 675, 98 So.2d 435 (1957). The liens are inchoate and will be lost if the lienors fail to perfect them according to the mandates of the statute. Ex parte Douthit, 480 So.2d 547 (Ala.1985); United States v. Costas, 273 Ala. 445, 142 So.2d 699 (1962).
Every mechanic or materialman must properly comply with three essential steps before a lien can be perfected: (1) provide statutory notice to the owner; (2) file a verified statement of lien in the probate office of the county where the improvement is located; and (3) file suit to enforce the lien. Ala.Code 1975, § 35-11-210. Each of these steps will be examined more closely below.
1. Provide statutory notice to the owner. According to § 35-11-210, there are essentially two types of liens, one for the full price of the materials furnished and another for the amount of the unpaid balance due the contractor from the owner. These two types of liens have been characterized as "unpaid balance" liens and "full price" liens. Hubbard, A Current Overview of Alabama's Mechanic's and Materialmen's Lien Law, 49 Ala.Law. 203, 204 (1988).
Section 35-11-210 requires that written advance notice be given to the owner for a "full price" lien:
"[I]f the person, firm or corporation, before furnishing any material, shall notify the owner or his agent in writing that such certain specified material will be furnished by him to the contractor or subcontractor for use in the building or improvements on the land of the owner or proprietor at certain specified prices, unless the owner or proprietor or his *142 agent objects thereto, the furnisher of such material shall have a lien for the full price thereof as specified in the notice to the owner or proprietor without regard to whether or not the amount of the claim for such material so furnished exceeds the unpaid balance due the contractor, unless on the notice herein provided for being given, the owner or proprietor or his agent shall notify such furnisher in writing before the material is used, that he will not be responsible for the price thereof."
For a full price lien, the required notice must be given in order to provide the owner with a reasonable opportunity to object before the materials are used.
For an "unpaid balance" lien to be held by a materialman who is not the original contractor, the materialman must comply with the notice provisions of § 35-11-218, which provides in part:
"Every person, except the original contractor, who may wish to avail himself of the provisions of this division, shall before filing his statement in the office of the judge of probate, give notice in writing to the owner or proprietor, or his agent, that he claims a lien on such building or improvement, setting forth the amount thereof, for what, and from whom it is owing; and after such notice, any unpaid balance in the hands of the owner or proprietor shall be held subject to such lien."
With this notice, "the owner then can take appropriate action in the disbursement of remaining contract monies to the general contractor to insure that the potential lienors are satisfied and the property is not encumbered." Hubbard, A Current Overview of Alabama's Mechanic's and Materialmen's Lien Law, 49 Ala.Law. 203, 205 (1988).
Moreover, for a notice of lien given by a supplier of materials to have legal effect, it must be in substantial compliance with the Code provisions. Kilgore v. First Assembly of God Church, 477 So.2d 300 (Ala. 1985); Harris Paint Co. v. Ripps, 289 Ala. 575, 269 So.2d 107 (1972). If notice is not properly given, a materialman's lien cannot be established.
The building industry today is operated on the basis of borrowed money, i.e., construction financing. Practically every corporation or would-be home owner must borrow. The practice in the industry has typically been that the construction loan funds will not be distributed in a lump sum. Rather, the funds are advanced from time to time as construction progresses, upon the lender's ascertainment (by the use of monitoring procedures such as vouchers and on-site inspections) that the work is indeed being completed or the supplies being furnished. This procedure allows the lender to actually corroborate the expenditures.
Because of the practices in the construction industry, we hold that from this day forward, public policy dictates that the same written notice that is required to be given to the owner must also be given simultaneously to the construction lender, if the lender's identity can reasonably be obtained. We note that it would not be that difficult to obtain the identity of the construction lender, because the lender's mortgage would be on record in the office of the judge of probate. This notice would give the construction lender, as well as the owner, the opportunity to insure that the mechanics and materialmen are paid out of the remaining contract funds, that any potential liens are satisfied, and that the property is not encumbered.[4]
We recognize that our holding in this regard will not resolve all the various inequities of the statute. However, the notice will make the lender aware of the mechanic's possible claim, and, we hope, more claims will be paid and fewer liens filed.
*143 2. File a verified statement of lien in the probate office of the county where the improvement is located. The second prerequisite to enforcement of a lien is the filing of a lien statement, within different time periods, as dictated by statute, from the date the last work was performed on the project. Original contractors must file within 6 months, laborers must file within 30 days, and every other claimant must file within 4 months. Ala Code 1975, § 35-11-215. Hartford Accident & Indemnity Co. v. American Country Clubs, Inc., 353 So.2d 1147 (Ala.1977); Home Federal Savings & Loan Ass'n v. Williams, 276 Ala. 37, 158 So.2d 678 (1963). The verified statement must be filed in the office of the judge of probate of the county where the property is located. Ala.Code 1975, § 35-11-213.
3. File suit to enforce the lien. The final step for perfection is to file suit in the circuit court of the county where the property is located (in the district court if the amount is less than $50). Ala.Code 1975, § 35-11-220. Suit must be commenced within six months "after ... maturity of the entire indebtedness." Ala.Code 1975, § 35-11-221. More than likely, this will be the date of the last labor performed or the date materials were last furnished. Yeager v. Coastal Mill Work, Inc., 510 So.2d 188 (Ala.1987).
C. Application of Whether Bailey Mortgage Has a Meritorious Defense.
From the sparse record before us, we conclude that Gobble-Fite's lien was properly perfected. We now turn to Bailey Mortgage's argument that, despite foreclosure on the mortgages, it retained priority as a mortgagee over Gobble-Fite's liens, pursuant to § 35-11-211. Gobble-Fite argues that while Bailey Mortgage at one time held mortgages on the subject lots, when Gobble-Fite perfected its liens Bailey Mortgage had already foreclosed and no longer held the first priority of the mortgages.
Under Gobble-Fite's analysis, whenever a construction lender foreclosed under its power of sale, a materialman's lien would advance to a first priority by reason of the foreclosure. Furthermore, stripping away the legal issues, the net effect of the trial judge's refusal to set aside the default judgment is that it elevates Gobble-Fite to first priority.
If we were to follow this reasoning, then in reality construction lenders would almost never foreclose. Ultimately, if lenders are unable to foreclose, they would also be compelled to no longer make any construction loans. This result would clearly stifle the construction industry as a whole and eventually punish everyone in the industry, including the very class of persons that the materialman's statute was designed to protect.
We disagree with Gobble-Fite's analysis and, for the foregoing reasons, hold that the holder of a prior mortgage that is superior to a mechanic's or materialman's lien who forecloses and purchases the property at the foreclosure sale does not lose its priority.
Gobble-Fite overlooks the underlying premise that the provisions of the mechanic's and materialman's statutes should be read in accordance with our other recording acts. Alabama is a "title theory" state, meaning that we adopt the general rule represented by the maxim "prior in tempore, potior in jure" (first in time, superior in right). Ala.Code 1975, § 35-4-90. In a "title theory" state, a mortgage passes legal title to the mortgagee, and the mortgagor is left with the equity of redemption. Trauner v. Lowrey, 369 So.2d 531 (Ala. 1979). The order of priority between persons claiming an interest in the same property, by mortgage or otherwise, is fixed by the order in which they are filed for record.
Under our recording statutes, the recordation of a mortgage is notice to the whole world of the existence of the mortgage on the land, and those dealing with the land thereafter do so at their own peril. The gist of the instant case is that Gobble-Fite, in essence a junior lienee, is effectively attempting to collect its claim out of property that is subject to an older, valid lien. Further support for our conclusion is *144 found in the materialman's priority statute itself, because the statute does not attempt to secure to mechanics or materialmen a lien paramount to older valid liens.
If foreclosure of a valid mortgage is properly conducted, all interests arising after the time the senior mortgage was created and all subordinate interests will be cut off unless the junior lienors redeem during the specified time period provided by statute. Powell, Law of Real Property ¶ 463[6] (1949). See Mid-State Homes, Inc. v. Butler, 287 Ala. 584, 253 So.2d 511 (1971) (an ejectment action, where the Court held that where a mortgagee foreclosed its duly recorded mortgage, purchased the property at the foreclosure sale, and received a foreclosure deed to the mortgaged property, legal title vested in it paramount to any junior mortgage).
After the foreclosure sale of the mortgaged property, if there are no other liens on the property, any surplus must be paid to the mortgagor. 55 Am.Jur.2d Mortgages § 930 (1971). However, if there are inferior liens and there is a surplus, all encumbrances inferior to the mortgage on which the sale is based must be paid in the order of time in which they respectively became liens. 55 Am.Jur.2d Mortgages § 931 (1971).
If there are no surplus proceeds, the only remedy or recourse available to a junior encumbrancer is the right to redeem. The statutory right of redemption is set forth in Ala.Code 1975, § 6-5-230. However, mechanics and materialmen are given a special right to redeem apart from § 6-5-230. Section 35-11-2 confers upon all mechanics and materialmen a statutory right of redemption. Section 35-11-2 provides in part:
"One who has a lien inferior to another, upon the same property, has a right:
"(1) To redeem the property in the same manner as its owner might, from the superior lien...."
Gobble-Fite cites our recent decision of Lucas Construction, Inc. v. Hugel, 551 So.2d 338 (Ala.1989), for the proposition that the purchaser of property at a non-judicial mortgage foreclosure enjoys no priority over properly perfected materialman's liens of which the purchaser had actual or constructive notice. In Lucas, the defendants were successors in interest to a mortgagee who, after a statement of lien was filed and other steps for perfection properly taken, foreclosed its mortgage and received a foreclosure deed. The question presented was whether the mechanic's lien was superior to their interest in the property. The issue was further complicated by the fact that the holder of the mechanic's lien did not name the original mortgagee as a defendant to the suit, as required by Ala.Code 1975, § 35-11-223(a).
To support our holding, we relied on the somewhat confusing case of Hanchey v. Hurley, 129 Ala. 306, 30 So. 742 (1900). In Hanchey it was observed, "By the purchase [at foreclosure] it [the mortgage] extinguished the mortgage debt, to the extent of the sum bid, and destroyed the lien of the mortgage." 129 Ala. at 310, 30 So. at 743.
Hanchey was cited on another occasion for the proposition that the holder of a mortgage that is superior to a mechanic's lien who forecloses and purchases at the foreclosure sale with notice of the lien takes his interest subject to the lien. See Grimsley v. First Avenue Coal & Lumber Co., 217 Ala. 159, 162, 115 So. 90, 92 (1927).
However, in Mallory v. Agee, 226 Ala. 596, 147 So. 881 (1932), on application for rehearing, the Court stated the following about the case of Hanchey v. Hurley:
"Reverting to the case of Hanchey v. Hurley, supra, it is apparent that the writer (Justice Tyson) was of the opinion that such mortgagee foreclosure purchaser was entitled to such protection [that of bona fide purchaser]. The question was on the sufficiency of a bill in equity by the claimant of a superior equity accruing after the execution of the mortgage, and before foreclosure. It is not at all indicated that the other members of the court agreed with his views, but were of the opinion that the burden was upon the purchaser to invoke such right by affirmative assertion of claim to *145 it, and not on complainant to overcome it. But it is also said that the majority hold that, if complainant proves his claim as averred, he is entitled to relief. No one of the majority undertakes to write their views. The last statement may, or may not, have been based solely on the fact that the claim was defensive, so thoroughly refuted by Justice Tyson in such a proceeding as has by this court since been held.
"But the expression of the court may have been due in part also to a disagreement with him as to the rights of a mortgagee foreclosure purchaser. His views are stated as though they were his only, for he uses the first person. There is certainly no indication of an express concurrence in them by the members of the court. We do not think that this court has ever so expressed an opinion. But we think the contrary is sound and results from a statement of the elements composing the claim as this court has defined them. A claim of the exact sort as this is evidently so rare, no authority directly in point seems to be available. It is not our idea that the case of Hanchey v. Hurley, supra, supports either view, and we did not so aver."
226 Ala. at 600-01, 147 So. at 884 (citations omitted).
Therefore, we conclude that our reliance upon Hanchey in Lucas v. Hugel was in error.[5]Lucas v. Hugel and those cases that relied on Hanchey are expressly overruled.[6]
Gobble-Fite also argues that when a mortgage is foreclosed, and there is bid for the mortgaged premises an amount equal to the mortgagee's debt, the mortgage ceases to exist. Aetna Insurance Co. v. Baldwin County Building & Loan Ass'n, 231 Ala. 102, 163 So. 604 (1935). Admittedly, as a general rule that is correct, but only to the extent that it describes the relationship between the mortgagor and mortgagee. Most of the cases relying on that general rule involve the claims of a mortgagor and mortgagee to proceeds of an insurance policy for a loss that occurred before foreclosure. See Smith v. Stockton, Whatley, Davin & Co., 487 So.2d 923 (Ala.Civ.App.1985); Aetna Insurance Co. v. Baldwin County Building & Loan Ass'n, 231 Ala. 102, 163 So. 604 (1935).
We summarize our conclusions thus far: First, at the time when the materials were furnished by Gobble-Fite, Bailey Mortgage's mortgage was on record. Second, Gobble-Fite properly perfected its materialman's lien, but it was inferior to Bailey Mortgage's mortgage. Third, because after Bailey Mortgage's foreclosure there were no surplus proceeds, the only remedy or recourse left to Gobble-Fite was the right to redeem under Ala.Code 1975, § 35-11-211. Therefore, Bailey Mortgage has established a meritorious defense and satisfied the first threshold prerequisite for setting aside the default judgment.[7]
*146 IV. WHETHER THE PLAINTIFF WILL BE UNFAIRLY PREJUDICED IF THE DEFAULT JUDGMENT IS SET ASIDE
The second step in the three-factor analysis that the trial judge must consider is the prejudice befalling the nondefaulting party if the default judgment should be set aside. Kirtland, 524 So.2d at 606. Because Gobble-Fite has failed to show any prejudice of the kind discussed in Kirtland, we conclude that Gobble-Fite would not be unfairly prejudiced if the default judgment were set aside.
V. WHETHER THE DEFAULT JUDGMENT WAS A RESULT OF THE DEFENDANT'S OWN CULPABLE CONDUCT
The final step in the three-factor analysis that the trial judge must consider is the culpability of the defaulting party's conduct. Conduct committed willfully or in bad faith constitutes culpable conduct for purposes of determining whether a default judgment should be set aside. Willful and bad faith conduct is characterized as incessant and flagrant disrespect for court rules, deliberate and knowing disregard for judicial authority, or intentional nonresponsiveness. Kirtland, 524 So.2d at 607-08. However, a defaulting party's reasonable explanation for inaction and noncompliance may preclude a finding of culpability. Ex parte Illinois Central Gulf R.R., 514 So.2d at 1288.
In support of its motion to set aside the default judgment, Bailey Mortgage attached affidavits of two of its employees stating that due to inadvertence, mistake, or excusable neglect, the summons and complaint were misplaced after service of process. After learning of the default judgment, Bailey Mortgage took immediate steps to retain counsel to set aside the default judgment.
We believe that Bailey Mortgage has set forth a reasonable explanation for its inaction and, thus, has precluded a finding of culpability on its part.

VI. CONCLUSION
We conclude that Bailey Mortgage has met the three-part test set forth in Kirtland for the setting aside of the default judgment and that it should receive its day in court. Therefore, the trial court's refusal to set aside the default judgment was an abuse of discretion. Kirtland v. Fort Morgan Authority Sewer Service, Inc., supra; Ex parte Illinois Central Gulf R.R., supra. The judgment is reversed and the cause is remanded. The trial court is instructed to set aside the default judgment and to allow Bailey Mortgage a reasonable time in which to file its answer, and to proceed in a manner consistent with this opinion.
*147 APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON and KENNEDY, JJ., concur.
JONES and ALMON, JJ., concur specially.
STEAGALL, J., concurs in the result.
ALMON, Justice (concurring specially).
For the future, Act No. 90-98 answers the question presented in this case, but it seems that the majority has prematurely given application to the new policy, to the detriment of Gobble-Fite Lumber Company, by overruling Ex parte Douthit, 480 So.2d 547 (Ala.1985), and Lucas Construction Co. v. Hugel, 551 So.2d 338 (Ala.1989). The result reached by this decision and the statute will in some cases unfairly place an economic burden on the materialman to redeem the entire property in order to recover a relatively small debt. The mortgagee bidding the outstanding amount of its debt at foreclosure will often make a profit on the value of the property in excess of that debt, and in some cases it will be economically unfeasible for a laborer or a materialman to redeem by paying the full amount of the foreclosure bid plus expenses, resell the property, and hope to recover his debt out of proceeds over and above the redemption price.
In light of the majority's decision to overrule Douthit and Lucas, I make no comment on whether the legislature's attempt to make Act No. 90-98 retroactive unconstitutionally deprives materialmen of their property rights. I concur specially because I think that Bailey Mortgage has stated a sufficiently meritorious defense to justify setting aside the default judgment. Even under the law as it existed prior to Act No. 90-98, the trial court could in some cases exercise its equitable powers and adjust the equities between the parties, so Bailey Mortgage might have been entitled to some relief from the default judgment holding its interest subordinate to Gobble-Fite's lien. Rabren v. Andalusia Lumber & Supply Co., 279 Ala. 551, 188 So.2d 279 (1966); East Gadsden Bank v. Bagwell, 273 Ala. 441, 143 So.2d 438 (1962); Baker Sand & Gravel Co. v. Rogers Plumbing & Htg. Co., 228 Ala. 612, 154 So. 591 (1934); Pilcher v. E.R. Porter Co., 208 Ala. 202, 94 So. 72 (1922); Birmingham Bldg. & Loan Ass'n v. May & Thomas Hdw. Co., 99 Ala. 276, 13 So. 612 (1893).
JONES, J., concurs.
STEAGALL, Justice (concurring in the result).
I agree with Justice Almon's statement in his special concurrence that Act No. 90-98 has taken care of the problem presented in this case for the future. I also agree with his comment that the result reached by this decision and the statute will sometimes unfairly place an economic burden on the materialman to redeem the entire property in order to recover a relatively small debt. However, in view of the majority's decision on rehearing to overrule the cases we relied upon in our original opinion, I concur in the result.
NOTES
[1] On October 12, 1987, Buffington sold and conveyed Lot 2, Block 5, to Keith E. Ford and his wife, Carol D. Ford. On that same date the Fords executed and delivered to Bailey Mortgage a mortgage against that property, which was recorded on October 13, 1987. The Fords are defendants in this action, but the default judgment includes no determination with respect to the lien claim against the Fords' property, and the Fords are not a party to this appeal.
[2] The earlier act read: "Such lien, as to the land, shall have priority over all other liens, mortgages, or incumbrances created subsequently to the commencement of the work on the building or improvement; and, as to the building or improvement, it shall have priority over all other liens, mortgages, or incumbrances, whether existing at the time of the commencement of the work, or subsequently created; and the person entitled to such lien may, when there is a prior lien, mortgage, or incumbrances on the land, have it enforced by a sale of the building or improvement under the provisions of this article, and the purchaser may, within a reasonable time thereafter, remove the same." Ala.Acts. 1876, No. 51, at 165-66.
[3] After the amendment, the priority section read: "Such lien as to the land and buildings or improvements thereon, shall have priority over all other liens, mortgages or incumbrances created subsequent to the commencement of work on the building or improvement; and as to liens, mortgages or incumbrances created prior to the commencement of the work, the lien for such work shall have priority only against the building or improvement, the product of such work which is an entirety, separable from the land, building or improvement subject of the prior lien, mortgage or incumbrance, and which can be removed therefrom without impairing the value or security of any prior lien, mortgage or incumbrance; and the person entitled to such lien may have it enforced by a sale of such buildings or improvement under the provisions of this division and the purchaser may, within a reasonable time thereafter, remove the same." Ala.Code 1975, § 35-11-211. For a case construing the 1933 amendment, see Empire Home Loans, Inc. v. W.C. Bradley Co., 286 Ala. 449, 241 So.2d 317 (1970).
[4] Our holding is strengthened by the fact that the original contractor is also required, on certain occasions, to furnish the owner with a complete list of all materialmen, laborers, and employees who have furnished any material or done any labor for the contract. If the contractor fails or refuses to furnish the list, or if he fails to pay the materialmen in accordance with any special contract made with the owner, he shall forfeit his right to a lien. Ala.Code 1975, § 35-11-219.
[5] Support for this conclusion is found in the fact that Mallory v. Agee, 226 Ala. 596, 147 So. 881 (1932), Grimsley v. First Avenue Coal & Lumber Co., 217 Ala. 159, 115 So. 90 (1927), and Hanchey v. Hurley, 129 Ala. 306, 30 So. 742 (1900), were all cases involving priority. Those priority problems would not arise today because of the 1933 amendment that reversed the priorities of the materialmen and subsequent mortgagees.
[6] We would also note that our holding also necessarily overrules the holding on the second issue presented in Ex parte Douthit, 480 So.2d 547 (Ala.1985).
[7] We are also aware that the legislature, apparently in response to our original opinion in this case, and our opinion in Ex parte Douthit, supra, and Lucas v. Hugel, supra, has recently amended § 35-11-211. See Act 90-98, Alabama Acts 1990. The effect of the amendment is that foreclosure of any prior mortgage shall terminate and extinguish all subordinate materialman's liens, leaving in the materialman a statutory right of redemption. Section 35-11-211, as amended, reads in pertinent part:

"XX-XX-XXX. Priority of Lien.
"(a) Such lien as to the land and buildings or improvements thereon, shall have priority over all other liens, mortgages or incumbrances created subsequent to the commencement of the work on the building or improvement. Except to the extent provided in subsection (b) below, all liens, mortgages and incumbrances (in this Section, `mortgages and other liens') created prior to the commencement of such work shall have priority over all liens for such work. Enforcement of such lien of a mechanic, materialman or other person created by section 35-11-210 (in this Section, `mechanic or materialman lien') shall not affect any prior mortgage or other lien, and the purchaser in connection with the enforcement of such mechanic or materialman lien shall take the property subject to such prior mortgages and other liens of which the purchaser has actual or constructive notice on the date of the purchase. Foreclosure of any prior mortgage or other lien shall terminate and extinguish such subordinate mechanic or materialman lien or other interest as to the land and the buildings and improvements thereon, whether or not at the time of such foreclosure such lien or interest has been perfected in accordance with the provisions of this division, and the mechanic, materialman or other person thereafter shall have, to the extent of his lawful claim under this division, the statutory right of redemption afforded under applicable redemption laws to a judgment creditor whose judgment was recorded on the date such work was commenced and such rights in any excess proceeds received by the foreclosing lienholder as provided by law.
"(b) ... If such mechanic or materialman lien for such work is not enforced prior to such foreclosure, the mechanic or materialman lien shall be terminated and extinguished and after such foreclosure, the mechanic, materialman or other person who held such mechanic or materialman lien thereafter shall have the statutory right of redemption and such rights in excess proceeds to the extent provided in subsection (a) above.
"(c) The provisions of this Act clarify and confirm the intent of the legislature regarding existing law governing the matters contained in this Act. The provisions of this Act shall apply to all mortgages and other liens and to all liens of a mechanic, materialman or other person created by section 35-11-210 existing on the effective date of this Act and those created or arising after such effective date."