ALMON, Justice.
Fountain Building and Supply Company (“Fountain”) brought an action against Jerry D. Washington, individually; Jerry D. Washington Construction Company, a corporation; [1] and Secor Bank, to establish a materialman’s lien. The trial court entered a judgment in favor of the defendants, holding that Fountain was barred under the doctrine of estoppel from enforcing a materialmen’s lien and that the alleged lien had been extinguished and discharged by virtue of a release executed and delivered by Fountain.
The pertinent facts of this case are as follows: In the summer of 1988, Washington Construction Company was building a house on Lot 7 in the Kings Meadow subdivision in Shelby County, Alabama. In May 1988, Fountain sold and delivered to Washington Construction lumber and other materials needed for the construction of the house. Fountain continued to supply materials to Washington Construction through June 1988. Fountain submitted a bill to Washington Construction for the materials, in the amount of $12,640.78. Washington Construction failed to pay this amount to Fountain and, on August 4, 1988, Fountain filed in the Shelby County probate office a verified statement of lien on Lot 7 to secure the amount owed by Washington Construction to Fountain. See Ala.Code 1975, § 35-11-210 et seq.
Washington Construction, when the lien was filed, was negotiating with Secor Bank for a construction loan. Secor informed Washington Construction that it would not provide the loan unless the lien was released and the title to the property was clear. Washington Construction contacted Fountain and, on August 8, 1988, Fountain released the recorded lien that it had previously filed. The release of the lien was filed in the Shelby County probate office.
In return for the release, Washington Construction gave Fountain a promissory note for the amount of the debt. The note was secured by a mortgage on another lot, Lot 11, also in the Kings Meadow subdivision. A written document, signed by Jerry Washington individually and in his capacity as president of Washington Construction, stated that he guaranteed that the $12,-640.78 due would be paid by August 17, 1988. The document also recited the additional security given for the debt, the mort *364 gage on Lot 11. The document further stated, “I further acknowledge that if said indebtedness is not paid as guaranteed herein that [sic] Fountain Building and Supply Company, Inc., will re-file its claim of lien on said Lot 7.”
After Fountain released the lien on Lot 7, Washington Construction’s loan from Se-cor, in the amount of $66,000, was approved and was closed on August 26, 1988. At the closing, Washington Construction executed a promissory note to Secor in the principal sum of $66,000 and secured the note with a mortgage on Lot 7. Fountain never received payment for the cost of the materials it sold to Washington Construction; so it refiled the materialmen’s lien on October 5, 1988. Washington Construction subsequently abandoned construction of the house on Lot 7 and defaulted in the performance of its obligations under the loan from Secor. Secor foreclosed its mortgage on January 11, 1989, and the-realty was conveyed to Secor by a mortgage foreclosure deed for a consideration of $52,-962.73.
Fountain filed a complaint on November 30, 1988, seeking to establish a material-men’s lien on Lot 7 and seeking a money judgment against Washington Construction. Fountain also named Secor as a defendant, alleging that Secor was the construction loan mortgagee of Lot 7. Fountain amended its complaint to include a cause of action for fraud, alleging that Washington Construction had fraudulently induced Fountain to release its lien on Lot 7. Secor counterclaimed, seeking a judgment declaring that Fountain’s lien was void and unenforceable against Secor and any of its successors in interest.[2]
The trial court, after an ore tenus proceeding, held that, by virtue of Fountain’s execution and delivery of the release of the lien on Lot 7, Fountain was barred under the doctrine of estoppel from enforcing the lien. The trial court further held that Fountain had canceled and discharged the lien and that the lien was forever extinguished and released as to Secor and as to anyone acquiring title to Lot 7 by or through Secor. Fountain was awarded a judgment in the amount of $12,640.78[3] against Washington Construction for the cost of the materials supplied by Fountain, and all claims of fraud and punitive damages against Washington Construction were denied.
Fountain argues that: 1) The trial court erred in applying the doctrine of estoppel to bar Fountain’s materialman’s lien because, Fountain argues, Secor had full knowledge that Fountain had reserved the right to refile its lien within the statutory period required for filing; and 2) The trial court erred in holding that Fountain’s lien was “forever extinguished” and thus unenforceable in any manner.[4]
An estoppel exists “when one person by his words, acts, conduct, or silence, induces another, on the faith thereof, to pledge his credit, incur a liability, or part with something valuable.... [T]o allow such representation to be gain-said, would be a fraud on him who had thus acted, believing it to be true.” Western Grain Company Cases, 264 Ala. 145, 164-65, 85 So.2d 395, 415 (1955) (citations omitted).
This Court stated in Floyd v. Rambo, 250 Ala. 101, 106, 33 So.2d 360, 364 (1948), that “[t]he doctrine of estoppel is one of prevention of fraud, and other things being equal, it will at no [time] be *365 applied to prevent the mechanic from taking a lien, unless the taking of it will work a fraud upon some third person.” Generally, there is no estoppel unless, without it, the actions of the party against whom the estoppel is sought will result in a wrong. Id.
In Jehle-Slauson Construction Co. v. Hood-Rich Architects & Consulting Engineers, 435 So.2d 716, 719-20 (Ala.1983), this Court stated:
“It is a well settled statement of law that ‘in absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties to be judged by the court from what appears within the four corners of the instrument itself, and parol evidence is not admissible to impeach or vary its terms.’ ”
[[Image here]]
“... [A] release, by its own operation, extinguishes a pre-existing right and can not be controlled or explained by par-ol.... A release, therefore, shall be held to include all demands embraced by its terms, whether particularly contemplated or not; and parol evidence is not admissible to show that a certain claim was not in the minds of the parties.”
(Citations omitted.)
In the present case, the “release of recorded lien” executed by Fountain stated, in pertinent part:
“In consideration of other security Fountain Building & Supply Company Inc., does hereby declare the above described verified claim of lien to be canceled, released and the lien claim thereby to be fully discharged.”
The release contained no language suggesting that the release was conditional upon the payment of the debt owed Fountain by Washington Construction or that, if the debt was not paid on or before August 17, 1988, Fountain would refile its lien on Lot 7.
As we have stated above, absent a clear showing of fraud, this Court will not look to parol evidence to determine the true intent of the parties in drafting a release. The trial court found that the purpose of the release was to enable Washington Construction to obtain its construction loan from Secor. This was evidenced by testimony from Fountain’s president, Sidney Howard, who testified that the purpose of the release was to induce Secor to make the construction loan to Washington Construction. In fact, Howard testified that he knew the lender would rely on the release in determining whether to lend Washington Construction the money. The document that stated Fountain would refile its lien if the debt was not paid also showed that the purpose of the release was to enable Washington Construction to obtain the construction loan from Secor.
The release in the present case was clear and unambiguous in its meaning, and there was no evidence of fraud on the part of Washington Construction in obtaining the release from Fountain; therefore, because the release was supported by a valuable consideration, a mortgage on another lot, and because it was unambiguous in meaning, it will be given effect according to the intention of Washington Construction and Fountain as determined from the four corners of the release. See Jehle-Slauson, supra.
The release clearly and unequivocally stated that the lien on Lot 7 was “can-celled, released and ... fully discharged.” Fountain drafted the release and, had it wanted to limit the release in any way, it could have stated its intentions in the release itself. Id. Its doing so would have put Secor on notice that the release was conditioned upon the payment of the debt from the proceeds of the construction loan and that Fountain intended to refile the lien if the debt was not paid.[5]
*366 Fountain argues that Secor had full knowledge of Fountain’s reserved right to refile the lien if it was not paid. Fountain maintains that Secor’s construction loan clerk had a copy of the document signed by Washington stating that, if the money was not paid, Secor would refile the lien. Washington testified that the document was included in the loan package that he gave to Secor’s loan representative; however, the loan representative no longer worked for Secor at the time of trial and she was not a witness at trial either.
Secor’s senior vice-president, Gene Wood-ham, the individual with ultimate authority to approve or disapprove the loan, testified that there was no document in Washington Construction’s loan folder that evidenced Fountain’s alleged right to refile the lien. The only document he found in the file was Fountain’s release of its materialman’s lien. He also testified that not every document that the loan clerk received would necessarily be placed in the file, because whether to place documents in the file was discretionary with the loan clerk.
Fountain also argues that Secor’s loan closing attorney knew of the conditional nature of the release; however, the attorney’s testimony showed only that he knew Washington Construction owed Fountain money and that arrangements were being made to take care of the lien. There was no evidence that the attorney knew of the agreement between Fountain and Washington Construction that Fountain would refile the lien if the debt was not paid.
We find that a fact question was presented as to whether Secor knew or should have known of the conditional nature of the release; therefore, because this was an ore terms proceeding, our standard of review is that the trial court’s findings are presumed correct, if supported by the evidence, and will not be disturbed unless the judgment is found to be plainly and palpably wrong. Sundance Marina, Inc. v. Reach, 567 So.2d 1322 (Ala.1990).
In the present ease, the evidence supported a finding that Secor did not have knowledge of the conditional nature of the release, and the trial court, having had the opportunity to see the witnesses and hear their testimony, was not plainly and palpably wrong in so finding.
It would be inequitable to allow the property owner and the lienholder to induce a lender to finance a building project by the release of a validly filed materialman’s lien, only to have the lienholder refile the mate-rialman’s lien after the lender has taken a mortgage on the property.
Secor relied on the release in approving the loan to Washington Construction, believing that the title to Lot 7 was free and clear of any encumbrances. To allow Fountain to refile its lien after inducing Secor, by executing the release, to lend Washington Construction money, would be a fraud on Secor, because Secor relied on the release in approving the construction loan. We affirm the judgment.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.

. We will refer to these two defendants as "Washington Construction" unless the context indicates otherwise.

. Secor also cross-claimed against Washington and Washington Construction, alleging that they were liable, by virtue of an affidavit and lien waiver executed at the closing of the construction loan, for any sums of money found owing to Fountain by Secor.

. The trial court entered an order modifying the amount of the judgment against Washington Construction from $12,640.78 to $15,513.12 to represent the corrected amount of the total debt due with interest added thereto.

.Fountain also raised a third issue regarding this Court's decision in Bailey Mortgage Co. v. Gobble-Fite Lumber Co., 565 So.2d 138 (Ala.1990); however, we find this argument to be without merit. Gobble-Fite deals with the extin-guishment of liens by the foreclosure of a mortgage, whereas the question in the present case is whether Fountain’s materialman's lien was extinguished by the release, and not by Secor’s foreclosure.

. The trial court held that Fountain was es-topped to rely on the document that allegedly made the release conditional, and Fountain argues that estoppel should not apply because Secor had knowledge of the document. In addressing the issues as decided by the trial court and argued by the parties, we express no opinion generally as to whether a lien that is absolutely discharged by a recorded release can be preserved by an ancillary, unrecorded doc *366 ument purporting to make the release conditional or can be revived by a refiling of the lien.